UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADELEINE YATES, on behalf of herself and other persons similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 17-cv-9219 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Madeleine Yates, brings this action against Checkers Drive-In Restaurants, Inc. and Vibes Media, LLC, alleging that the defendants violated the Telephone Consumer Protection Act by repeatedly sending her commercial advertisements via text message. The defendants now move to dismiss Yates' complaint for failure to state a claim. For the reasons set forth herein, that motion [65] is granted in part and denied in part.

**Background**

The following allegations are from the plaintiff's complaint and are taken as true for the purpose of the present motion. Checkers contracts with Vibes to conduct nationwide text message promotion campaigns.

Yates texted the word "Buford" to the defendants' SMS number, 88001, in order to obtain a coupon for a free "Big Burford" cheeseburger. In response, the defendants sent Yates a message stating:

> REPLY with you ZIP CODE to get your FREE Big Buford coupon
> & other deals from Checkers/Rally's at this #. No purchase
> necessary to join.

1

Yates replied with her zip code, and received a text message from the defendants reading:

> You're a BOSS! You scored a FREE Big Buford from Checkers/Rally's. Tap to view & redeem your offer: http://vbs.cm/D1Xq3m. Txt STOP2stop.

Yates subsequently received the following string of text messages between January and April 2017.

> Go BUCK wild on this deal. Checker/Rallyburger with Cheese for just a $1 at Checkers/Rally's. Limited time only. http://vbs.cm/G1cu6q Txt HELP4help, STOP2end.
>
> When two burgers become one! Grab a FREE Roadhouse Baconzilla w/LG drink purchase at Checkers/Rally's. View & redeem: http://vbs.cm/t1CwbdExpl/23/17.
>
> Seasoned & cheese-oned. Get FREE Monsterella Stix (4PC.) w/any drink purchase at Checkers/Rally's. View & redeem: http://vbs.cm/G19xAs Exp1/30/17. Text Stop2end.
>
> Get SUPER saucy this Sunday. Score big with any flavor 20pc wings for $12.99 w/purchase. Checkers/Rally's. View/Redeem: http://vbs.cm/p2M0LS Exp2/6/17.
>
> BACON CHEDDAR CRISP. Now part of the 4/$3 deal at Checkers/Rally's. Get a sandwich, fries, drink & apple pie – all for $3: http://vbs.cm/W2Q2vh. Txt HELP4help.
>
> Fries>Flowers. Profess your Fry Love this Valentine's day. Get a FREE Lg fry w/purchase from Checkers/Rally's. View & redeem: http://vbs.cm/02S3H4 Exp 2/20/17.
>
> New deal alert! FREE Monstrella Stix Dbl Burger or Monstrella Chicken Parm w/Lg drink purchase @ Checkers/Rally's. View/redeem: http://vbs.cm/B2w5mg.
>
> These shrimp are cray. Get a FREE Cheddar Biscuit Shrimp & Fries Box w/ Lg drink purchase at Checkers/Rally's. View & Redeem: http://vbs.cm/R2K8kc Exp3/23/17.
>
> Two ways to go bold. Buy 1 Crispy Fish or Spicy Chicken sandwich, get 1 FREE at Checkers/Rally's. View and redeem: http://vbs.cm/n2KCnP Exp4/7/17. Text STOP2stop.
>
> Oh Yeah! The Kool-Aid Watermelon Slushie is NEW at Checkers/Rally's. Get a FREE regular size w/any purchase. View & redeem: http://vbs.cm/Q23Hf2 Exp4/17/17.

Yates alleges that these messages were sent to thousands of cellular telephone numbers using hardware designed to dial random and sequential numbers or to store and dial lists of telephone numbers automatically.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must assert factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

**Discussion**

The defendants contend that Yates has not adequately alleged the use of an Automatic Telephone Dialing System because the system that she alleges does not dial random or sequential numbers. Under the TCPA, an automatic telephone dialing system is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The DC Circuit, vacating prior FCC interpretations, has concluded that under this statutory language the device in question must itself generate random or sequential numbers to be dialed, rather than accessing stored lists of numbers. *ACA Int'l v. FCC*, 885 F.3d 687, 699–702 (D.C. Cir. 2018). The Ninth Circuit, by contrast, has rejected that interpretation and held that a marketing platform that sends promotional text messages to a list of stored telephone numbers constitutes an

3

autodialer. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1050–53 (9th Cir. 2018). Within this district, *ACA Int'l* has been applied to preclude TCPA claims based on express allegations involving the use of a "predictive dialer." *See, e.g. Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 937–939 (N.D. Ill. 2018) (Feinerman, J.). Here, however, Yates alleges both that the auto-dialing equipment at issue "includes features substantially similar to a predictive dialer" and that it has "the capacity to store, produce, and dial random and sequential numbers." *Pinkus* only addresses the sufficiency of the former allegation, and the latter provides sufficient basis to conclude that the existence of an automatic telephone dialing system has been adequately alleged at this preliminary stage in the proceedings, given the general rule that allegations of an automated telephone dialing system are liberally construed in light of the lack of information available to plaintiffs. *See generally Mauer v. American Intercontinental University, Inc.*, No 16-cv-1473, 2016 WL 4651395, at *4 (N.D. Ill. Sept. 7, 2016) (Ellis, J.). Although the defendants' arguments might well have merit once fact discovery is complete and the nature of the system at issue known, at present they are premature.

The defendants next contend that Yates cannot state a claim because she consented to receive the messages at issue. Under the Telephone Consumer Protection Act (TCPA), the use of an automated telephone dialing system (autodialer) is only permitted upon the prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A). The FCC's implementing rules further require that the prior consent be in writing. *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 27 FCC Rcd. 1830, 1838 (2012). The disclosures generating such consent must be "clear and conspicuous" such that the notice they provide would be apparent to a "reasonable consumer." *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018) (Leinenweber, J.). An exception to this general rule exists, however, for a "one-time text" sent in response to a consumer's request for information that contains only the information requested by the consumer with no other marketing or advertising information. *In re Matter of Rules and Regulations*

4

*Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 8015–16 at ¶ 104–106 (2015). In such instances, a consumer's prior express consent need not be in writing. *Id.*

Here, Yates texted "Burford" to the defendants, based on the expectation that she would receive a coupon as a result. In response to that initial message, she received a message informing her that in order to get that coupon she needed to reply with her zip code and, seemingly, consent to receiving other deals in future. The defendants describe this as a "verification text," intended to ensure a record of the plaintiff's unambiguous consent to opt in to the marketing program at issue. This argument, however, is predicated on the assumption that those who texted "Burford" to the defendants actually intended to opt in to a marketing program. Yates, however, alleges that she sent the text believing only that she would receive a coupon for a free burger in response. Unfortunately, Yates has not alleged the contents of the underlying communication that compelled her to send her "Burford" text message, and it is therefore impossible to ascertain whether or not the defendants' initial text message constituted a permissible one-time response to a request for information.

Yates further contends that all of the subsequent text messages that she received occurred without her consent. Although Yates admits to replying with her zip code after being informed that doing so would get her a "FREE Big Buford coupon & other deals from Checkers/Rally's at this #," she claims that this language did not disclose that by agreeing to "other deals" she would receive commercial advertisements sent by an automatic telephone dialing system. To the contrary, this language expressly communicated that Yates would receive other deals from Checkers/Rally's at her phone number if she replied with her zip code, and she expressly consented to doing so by replying to that message with her zip code. The Seventh Circuit has recognized that there is no distinction between consenting to receive "deals" or "discounts" and consenting to receive mass marketing texts conveying those deals or discounts. *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017). Although the initial offer to convey "other deals" might itself have exceeded the scope of Yates'

5

consent, it cannot be argued that the subsequent messages were not consented to based on the allegations in the complaint.

Yates also contends that the defendants violated the TCPA by failing to disclose how to opt-out of receiving future text messages from the defendants in every text message. 47 C.F.R. 64.1200(b)(3) requires that artificial or prerecorded voice telephone messages including an advertisement or constituting telemarketing provide an automated opt-out mechanism. The defendants therefore contend that the text-messages at issue are outside the scope of the TCPA's opt-out requirements which apply only to voice messages. Yates, in response, points to a number of administrative decisions that she contends require opt-out disclosures. Those decisions are inapposite. The FCC has recognized that text-messages are "calls" for the purpose of the TCPA and has, in specific contexts, required that text messages contain opt-out provisions where they are being sent without the full protections of the TCPA. *See in re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961 ¶ 64 (2015) (discussing the requirement that text messages from shippers seeking an exemption from the TCPA must contain an opt-out mechanism); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 31 F.C.C.R. 9074 (2016) (applying a similar opt-out requirement to government debt-collection calls exempted from the TCPA's consent requirement by the Bipartisan Budget Act of 2015). Yates, however, has failed to offer any legal authority establishing that the requirements of 47 C.F.R. § 64.1200(b)(3) are applicable to text messages absent administrative action. S*ee Reese v. Marketron Broadcast Solutions, Inc.*, No. CV 18-1982, 2018 WL 2117241, at *6 (E.D. La. May 8, 2018) (dismissing identical claims based on the failure to allege receipt of artificial or prerecorded voice telephone messages).

As a final matter, the defendants assert that Yates cannot state a claim under the TCPA because she manufactured the harm that she now complains of by opting into the defendants' text

messages. Although such an argument may be appropriate once evidence of Yates' motives is before this Court, there is nothing presently before it to suggest that Yates falls outside the TCPA's scope of protection.

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss [65] is granted in part and denied in part. Yates' TCPA claims are dismissed with the exception of her claim that she did not consent to receive the initial text message from Checkers.

IT IS SO ORDERED.

Date:

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge