**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MADELEINE YATES, on behalf of herself and other persons similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| *v.* | ) ) | Civil Action No. 1:17-cv-09219 |
| CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC, | ) ) ) | |
| *Defendants.* | ) ) ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

1. Introduction……………………………………………………………………………… 1
2. Background …………………………………………………………………………………… 2
3. Settlement Terms ……………………………………………………………………… 3
   a. The Settlement Class …………………………………………………………...3
   b. Settlement Consideration ……………………………………………………… 3
   c. The Notice Program …………………………………………………………………3
      i. Long-Form Notice ……………………………………………………………4
      ii. Short-Form Notice …………………………………………………………...5
      iii. Settlement Website ……………………………………………………………5
   d. Claims Process …………………………………………………………………… 5
   e. Distribution of Merchandise Vouchers ……………………………………………6
   f. Settlement Administrator ……………………………………………………… 6
   g. Opt-Out and Objection Procedures ………………………………………………7
   h. Release of Claims …………………………………………………………………8
   i. Class Counsel's Attorney's Fees and Costs and Plaintiff's Incentive Award ….……8
4. Preliminary Approval & Certification …………………………………………………9
   a. The Proposed Settlement Warrants Preliminary Approval…...…………………9
   b. The Proposed Settlement Class Meets All Requirements For Certification for Purposes of Settlement Under Federal Rule 23. ………....……………………13
      i. The Proposed Settlement Class Is Ascertainable based on Objective Criteria. ……………………………………………………………………13
      ii. The Proposed Settlement Class meets all four prerequisites to certification under Federal Rule 23(a). ……………………………………………………...14
         1. Numerosity ……………………………………………………………14
         2. Commonality …………………………………………………………15

3. Typicality ……………………………………………………… 16
4. Adequacy ………………………………………………………17
iii. The Proposed Settlement Class Is Certifiable Under Federal Rule 23(b)(3)…………………………………………………………… 19
1. Common questions predominate within the Settlement Class...…19
2. A class action is the most efficient way of adjudicating the putative Settlement Class Members' claims and is superior to a multitude of individual lawsuits. ……………………………………………... 21
iv. The proposed Notice Plan satisfies Due Process and the requirements of Federal Rule 23. ……………………………………………………23
v. Plaintiffs' Counsel Should Be Appointed Class Counsel. ……………….24
5. Conclusion …………………………………………….……………………………25

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Agne v. Papa John's Int'l, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012) ……………………………………………………..16

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ………………………………………….………18, 19, 21, 23

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ……………………..…………...23

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) …………....................................................................9, 10

*Banegas v. Calmar Corp.*,
No. 15-593 (E.D. La.) …………………………………………………..…...18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014) ……………………………………..…….....14

*Blank v. Tomorrow PCS*,
No. 16-11092 (E.D. La.) …………………………………….…….................18

*Booth v. Appstack, Inc.*,
No. C13-1533, 2015 WL 1466247 (W.D. Wash. March 30, 2015) …………………………..…16

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
280 F.R.D. 408 (N.D. Ill. 2012) …………………………………………...…...14

*Caceres v. Custom Drywall & Painting LLC*,
No. 17-6949 (E.D. La.) ……………………………………………………..…………...19

*Calix v. Ashton Marine LLC*,
No. 14-2430 (E.D. La.) …………………………………………………...18

*Carrasco v. Demoine Declouette*,
No. 16-11128 (E.D. La.) ……………………………...…...…………………...18

*Direct Digital, LLC v. Mullins*,
No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) ………………………...……...14

*Dominguez v. Yahoo, Inc.*,
894 F.3d 116 (3d Cir. 2018) ……………………………………………....……..11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) …………………………………………………………………………23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ………………………………………………...........……………19

*Esparza v. Kostmayer Construction*,
No. 15-4644 (E.D. La.) …………………………………………………….……...……18

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) …………………………………………………..………9

*Gadelhak v. AT&T Servs., Inc.*,
No. 17-cv-01559, 2019 WL 1429346 (N.D. Ill. March 29, 2019) ………………………...……11

*Gasper v. Linvatec Corp.*,
167 F.R.D. 51 (N.D. Ill. 1996) ……………………………………………….………17

*Gen. Tel Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) …………………………………………...…………………………23

*Golon v. Ohio Savs. Bank*,
98 C 7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ……………………………….…...20

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987) ………………………………………………………18

*Green v. Serv. Master On Location Servs. Corp.*,
No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) …………………………...……21

*Guevara v. JNV Glass Installation and Repair LLC*,
No. 17-10625 (E.D. La.) ………………………………………………………………....19

*Haynes v. Logan Furniture*,
503 F.2d 1161 (7th Cir. 1974) …………………………………………….…………22

*Hernandez v. Exterior Walls*,
No. 15-4392 (E.D. La.) ……………………………………………………….……18

*Hernandez v. Morning Call Coffee Stand*,
No. 17-2613 (E.D. La.) …………………………………………………………………18

*Hinman v. M & M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ……………………………….……..…………15, 17, 18, 21

*In re AT&T Mobility Wireless Data Servs. Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ……………………………………………….…………9, 10, 24

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) …………………………………………….……………21

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) …………….………….…...23

*Ira Holtzman, C.P.A. v. Turza*,
728 F.3d 682 (7th Cir. 2013) …………………………………………………..…….16, 22

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ……………………………………………...…………10

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) …………………………………...…………..……………16

*Kessler v. Am. Resorts Int'l*,
05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ……………………………………10

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) …………………………………………..…………20

*Knutson v. Schwan's Home Serv., Inc.*,
No. 3:12-cv-0964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) ………………..……………22

*Leon v Diversified Concrete*,
No. 15-6301 (E.D. La.) …………………………………………..……………………………...18

*Lopez v. Hal Collums Constr., LLC*,
No. 15-4113 (E.D. La.) ……………………………………………………………………………18

*Mairena-Rivera v. Langston Construction*,
No. 16-850 (M.D. La.) ……………………………………………………..………..  18

*Maldonado v. New Orleans Millworks, LLC*,
No. 17-1015 (E.D. La.) ……………………………………………………………………………19

*Martinez v. Southern Solutions Land Mgmt.*,
No. 14-2366 (E.D. La.) ……………………………………………………………………………18

*Medgebow v. Checkers Drive-In Restaurants, Inc.*,
No. 9:19-cv-80090 (S.D. Fla.) ……………………………………………..………......……3

*Mitchem v. Illinois Collection Serv., Inc.*,
271 F.R.D. 617 (N.D. Ill. 2011) ………………………………………………...…………13

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) …………………………………………………………14

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ………………………………………………………………22

*Murillo v. Coryell Cnty. Tradesmen, LLC*,
No. 15-3641 (E.D. La.) ……………………………………………………………………………18

*Munoz v. Bollinger Shipyards*,
No. 15-2328 (W.D. La.) ……………………………………………………………………………18

*Nieto v. Pizzati Enterprises, Inc.*,
No. 16-5352, (E.D. La.) ……………………………………………………………………………18

*Nunez v. Orleans Shoring*,
No. 16-3005 (E.D. La.) ……………………………………………………..………………18

*Ott v. Mortg. Inv'rs Corp. of Ohio*,
65 F. Supp. 3d 1046 (D. Or. 2014) …………………………………………...…..………21

*Palma v. Tormus Inc.*,
No. 15-3025 (E.D. La.) ……………………………………………………………………………18

*Pereira v. JRV Services LLC et al*,
No. 18-2720 (E.D. La.) ……………………………………………………………………………18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) …………………………………………………..…………….23

*Pinkus v. Sirius XM Radio, Inc.*,
319 F.Supp.3d 927 (N.D. Ill. 2018) …………………………………………………11

*Randolph v. Crown Asset Mgmt., LLC*,
254 F.R.D. 513 (N.D. Ill. 2008) …………………………………………...……….15

*Rendon v. Global Technical Solutions*,
No. 15-242 (E.D. La.) ……………………………………………………………..………18

*Retired Chicago Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) ………………………………………………….……...…..…17

*Rios v. Classic Southern Home Construction*,
No. 15-4104 (E.D. La.) ……………………………………………………………………………18

*Rosario v. Livaditis,*
963 F.2d 1013 (7th Cir. 1992) ……………………………………….……………...17
*Schulte v. Fifth Third Bank,*
805 F. Supp. 2d 560 (N.D. Ill. 2011) ……………………………………….……...11
*Silbaugh v. Viking Magazine Servs.,*
278 F.R.D. 389 (N.D. Ohio 2012) ……………………………………...……...20, 21
*Smith v. Nike Retail Servs., Inc.,*
234 F.R.D. 648 (N.D. Ill. 2006) ………………………………………………....15
*Soppet v. Enhanced Recovery Co., LLC,*
679 F.3d 637 (7th Cir. 2012) ……………………………………….……………14
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646 (7th Cir. 2006) …………………………………….............9, 10
*Valle v. Beaurayne Builders LLC,*
No. 17-274 (M.D. La.) …………………………………………………...…19
*Vasco v. Power Home Remodeling Group LLC,*
No. 15-4623, 2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) …...………………….....20
*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ……………………………………………..…………15

## Statutes

28 U.S.C. § 1715 ……………………………………………...…………24
47 U.S.C. § 227 ……………………………………...……2, 16, 22
Fed. R. Civ. P. 23(a)(1) ………………………………………….…………14
Fed. R. Civ. P. 23(a)(2) …………………………………………….…………15
Fed. R. Civ. P. 23(a)(3) …………………………………………….…………16
Fed. R. Civ. P. 23(a)(4) …………………………………………….…………17
Fed. R. Civ. P. 23(b)(3) ……………………………………19, 22, 23
Fed. R. Civ. P. 23(c)(2) ………………………………………...……23, 24
Fed. R. Civ. P. 23(e)(1) ………………………………………….…………23
Fed. R. Civ. P. 23(e)(2) ………………………………………...…………9
Fed. R. Civ. P. 23(e)(4) …………………………………………….…………24
Fed. R. Civ. P. 23(g)(1) ………………………………………...……24, 25

## Other Authorities

7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1760 (2d ed.
1987)…………………………………………………………………….…………13
Conte & Newberg, 4 Newberg on Class Actions, § 11.25 (4th Ed. 2002) ……………...…….9, 13
Manual for Complex Litigation, § 21.632 (4th ed. 2004) …………………………………...………9

Plaintiff Madeline Yates, on behalf of herself and a class of similarly situated persons, respectfully submits this unopposed motion requesting entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.  The defined terms used herein have the meanings set forth in the Settlement Agreement.

## I.    <ins>INTRODUCTION</ins>

In the course of a settlement conference with the Court on October 2, 2019, the parties reached the terms of a class wide Settlement. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious litigation centered on unsettled legal questions. This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;
2. Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;
3. Approval of the Settlement Administrator;
4. Approval of the Notice program describing:
    i. The Settlement and the Settlement Class members' rights with respect to the Settlement;
    ii. The proposed Release of claims;
    iii. Class Counsel's request for Attorneys' Fees and Costs, as well an Incentive Award for the Class Representative; and
    iv. The procedure for opting-out of or objecting to the Settlement
5. Approval of the Claims process; and
6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is fair and reasonable for several reasons. First, it provides relief for Settlement Class Members where their recovery would otherwise be uncertain, given the defenses pled by Defendants and the current state of the law in this District. Second, the Settlement was reached after the parties engaged in extensive discovery, depositions, motion practice, and extensive arm's-length negotiations.

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls[.]"[1] As alleged in the Third Amended Complaint, Defendants initiated a text message campaign wherein consumers were offered a coupon for Checkers-branded food products if those consumers texted a keyword to Defendants. Dkt. 64 at ¶¶ 15-19. After consumers texted the keyword to obtain the coupon, the initial text message response by Defendants did not include any coupon—but instead a request that consumers reply to obtain the coupon and other deals. *Id*. at ¶¶ 15-19. According to Plaintiff this text message violated the TCPA because it was a "marketing" message sent without consumers express written consent.

Defendants deny any wrongdoing. Defendants contend the single text was not a violation of the TCPA and that there are various challenges to class certification and the merits of Plaintiff's claim, including but not limited to: (i) the consent language required under the TCPA was

---

[1] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

displayed on every piece of media offering consumers a coupon in exchange for texting a keyword; and (ii) the equipment used by Defendants to transmit the text messages at issue in this case was not an "automatic telephone dialing system" under the TCPA.

## III.  SETTLEMENT TERMS

### A.  The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All individuals within the United States who were sent a Checkers or Rally's-branded promotional text message by or on behalf of Defendants from December 21, 2013, to March 8, 2019.**

Excluded from the Settlement Class are: (1) the trial judge presiding over this Action; (2) Defendants, as well as any parent, subsidiary, affiliate, or control person of Defendants, and the officers, directors, agents, servants, or employees of Defendants; (3) any of the Released Persons; (4) any Successful Opt-Outs; (5) Class Counsel, their employees, and their immediate family; and (6) members of the settlement class approved in *Medgebow v. Checkers Drive-In Restaurants, Inc.,* No. 9:19-cv-80090 (S.D. Fla.) on September 18, 2019.

### B.  Settlement Consideration

Pursuant to the Settlement, Defendants have agreed to provide two $5 Merchandise Vouchers to all Settlement Class Members who submit a Valid Claim Form, in addition to Settlement Administration Costs, Attorneys' Fees and Costs to Class Counsel up to three hundred and fifty-four thousand dollars ($354,000.00) (if so awarded by the Court), and an Incentive Award to the Plaintiff up to $7,000.00 (in addition to any Merchandise Vouchers she receives as a Settlement Class Member) for her efforts on behalf of the class (if so awarded by the Court).

### C.  The Notice Program

Pending this Court's approval, JND Legal Administration ("JND"), will serve as the Notice Administrator, and will be responsible for administrating the Notice Program. The Notice Program consists of three different components: (1) Long-Form Notice; (2) Short-Form Notice; and (3) a Settlement Website. The forms of the proposed Notices agreed upon by Class Counsel and Defendants, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as exhibits.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for an Incentive Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement; and other important documents.

### i.     *Long-Form Notice*

The primary form of notice is by email. Defendants will provide the Settlement Administrator with a list of Class Members' unique cellular telephone numbers, as they exist in Defendants' records.  The Settlement Administrator shall perform a reverse look-up (and other investigations deemed appropriate by the Settlement Administrator) of those telephone numbers to identify the current email address for the owner of the number. The Settlement Administrator will email the Long-Form notice, together with the Claim Form, to the identified email addresses. A copy of the Long-Form Notice is attached to the Settlement Agreement as Exhibit 4. Individuals who receive the Long-Form Notice will have the option of mailing in the Claim Form or visiting the Settlement Website to download and file a Claim Form.

4

Long-Form Notice will be completed no later than 40 days after entry of the Preliminary Approval Order, and claims may be made through 30 days prior to the date of the Final Approval Hearing.

### ii.    Short-Form Notice

If any Long-Form Notice is returned as undeliverable, then the Settlement Administrator shall perform a reverse look-up (and other investigations deemed appropriate by the Settlement Administrator) and mail the Notice to the current mailing address for the owner of the number using the Short-Form Notice (substantially in the form of Exhibit 3).

### iii.    Settlement Website

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. The Settlement Website will be established prior to the date of the mailing of the Notice. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Defendants agree to post or that the Court orders be posted on the Settlement Website.  These documents will remain on the Settlement Website at least until entry of the Final Approval Order.

### D.    Claims Process

The Claims Process here is straightforward, easy to understand, and designed so that Class Members can easily claim their Merchandise Vouchers. Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 1. Claim Forms may be sent in by hard copy or submitted electronically on

the Settlement Website. The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; and (3) cellular telephone number(s) at which she or he was sent a text message. Once a Settlement Class member submits a Valid Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to receive their Merchandise Vouchers. Untimely or otherwise deficient Claim Forms will be rejected and those Settlement Class Members will not receive Merchandise Vouchers. If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Claim Forms can be submitted until 30 days before the Final Approval Hearing Date.

### E.    Distribution of Merchandise Vouchers

Each Settlement Class Member who submits a Valid Claim Form by the Claim Deadline in the manner required by the Settlement Agreement, making all the required affirmations and representations, shall be sent two five dollar ($5.00) Merchandise Vouchers. Settlement Class Members who submit a Valid Claim Form will be sent their Merchandise Vouchers to the email address they submitted on their Claim Form.

### F.    Settlement Administrator

Pending this Court's approval, JND shall serve as the Settlement Administrator. The Settlement Administrator's responsibilities may include (but are not necessarily limited to):

- obtaining from Class Counsel and Defendants the unique cellular telephone information for Settlement Class members;

- providing E-Mail and U.S. Mail Notice to Settlement Class members;

- establishing and maintaining the Settlement Website;

- establishing and maintaining a mailing address for receiving Claim Forms and requests for exclusion from the Settlement Class;

- receiving, evaluating, and processing Claim Forms;

- advising Settlement Class members if their Claim Forms are deficient;

- providing prompt reports of the identity of opt-outs (if any) to Class Counsel and Defendants;

- responding to any Settlement Class member inquiries;

- processing all requests for exclusion from the Settlement Class;

- at Class Counsel's request, and in advance of the Final Approval Hearing, preparing a list to submit to the Court that identifies each Settlement Class member who timely and properly requested exclusion from the Settlement Class;

- distributing the Merchandise Vouchers.

**G.    Opt-Out and Objection Procedures**

Class Members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendants, subject to any defenses that Defendants may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, no later than 30 days before the Final Approval Hearing. The Settlement Administrator will communicate any opt-out requests to Class Counsel and

Defendants, who will in turn report them to the Court as part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no less than thirty (30) days before the Final Approval Hearing. Pending Court approval, for an objection to be considered by the Court, it must include the following:

- set forth the Settlement Class Member's full name, current address, and telephone number;

- identify the cellular telephone number of the Settlement Class Member that brings him or her within the scope of the Settlement Class;

- contain the Settlement Class Member's original signature or the signature of counsel for the Settlement Class Member;

- state that the Settlement Class Member objects to the Settlement, in whole or in part;

- set forth a statement of the legal and factual basis for the Objection; and

- provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position.

**H.     Release of Claims**

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members have agreed to the release as defined in the Settlement Agreement.

**I.     Class Counsel's Attorney's Fees and Costs and Plaintiff's Incentive Award**

Defendants have agreed to pay Class Counsel up to three hundred and fifty-four thousand dollars ($354,000.00) as Attorney's Fees and Costs incurred in the prosecution of the Action, if so awarded by the Court. Defendants have also agreed to pay Named Plaintiff an Incentive Award of up to $7,000.00 (in addition to any Merchandise Vouchers she receives as a Settlement Class Member) for her efforts on behalf of the class, if so awarded by the Court.

8

## IV.     PRELIMINARY APPROVAL & CERTIFICATION

### A.     The Proposed Settlement Warrants Preliminary Approval.

The proposed Settlement provides substantial relief to the Settlement Class Members and represents a fair and reasonable resolution of this dispute. It therefore merits Court approval, along with notice to the Settlement Class Members. Judicial approval of a proposed class action settlement requires a finding that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). This review involves a well-established two-step process. Conte & Newberg, 4 Newberg on Class Actions, § 11.25, at 38-39 (4th Ed. 2002); *Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The first step is a preliminary, pre-notification evaluation to determine whether the proposed settlement is "within the range of possible approval." Newberg, § 11.25, at 38-39; Armstrong, 616 F.2d at 314. The preliminary approval evaluation is not a final fairness hearing. Rather, it is an evaluation to determine whether there is reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. Newberg, § 11.25, at 38-39; Armstrong, 616 F.2d at 314. The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004). If the Court finds a settlement proposal "within the range of possible approval," the case proceeds to the second step in the review process—the final approval hearing. Newberg, § 11.25, at 38-39.

Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347 (internal quotations and citations omitted). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

In evaluating whether a class action settlement is fair, reasonable, and adequate, courts consider a number of factors, including: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. Id. (citing *Isby*, 75 F.3d at 1199). Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Application of these factors to this case demonstrates that the proposed Settlement is fair, reasonable, and adequate. The Settlement in this case is an extraordinary result and provides significant benefits to Settlement Class Members in light of the strength of the case. While Plaintiff

believes her TCPA claims against Defendants are actionable, she recognizes there are several risks to proceeding with the litigation that make the Settlement a fair and reasonable compromise. For one, the majority of courts ruling on the technology like that used by Defendants in this case have found it not to be violative of the TCPA. *See e.g. Pinkus v. Sirius XM Radio, Inc*., 319 F.Supp.3d 927, 939 (N.D. Ill. 2018) (citing *Dominguez v. Yahoo, Inc*., 894 F.3d 116 (3d Cir. 2018)); *Gadelhak v. AT&T Servs., Inc*., No. 17-cv-01559, 2019 WL 1429346 (N.D. Ill. March 29, 2019). Additionally, Plaintiff's theory of the case rests on an untested theory i.e. that the materials advertising Defendants' allegedly unlawful text campaign included the required consent language, but that the font displaying the consent language was too small. With no precedent for this legal theory Plaintiff's chances of prevailing were, at best, uncertain.

Taking these realities into account, and recognizing the risks involved in any litigation, the proposed settlement relief represents an excellent result for the Settlement Class. If Defendants were to succeed on its defenses to liability against Plaintiff's individual claims, the Settlement Class Members would recover nothing. In addition to Defendants defenses on the merits, Plaintiffs would have been required to prevail on a contested class certification motion, for which success is by no means guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011).

The second and third factors also favor approval of the Settlement here, as any trial in this matter is likely to be complex and expensive. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Id*. at 586 (citation omitted). Further, the trial is unlikely to take place for some time, given that prior to the settlement conference, the Parties had yet to litigate summary judgment or class certification. "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members]

will realize both immediate and future benefits as a result." *Id*. Plaintiffs and Settlement Class Members will receive meaningful benefits now, instead of years from now—or perhaps never. See *id*. at 582. In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial.

Even in the event that the litigation reached trial, evidence and witnesses from across the country would have to be assembled in multiple forums. Given the complexity of the issues and the amount in controversy, the losing Party would likely appeal both the decision on the merits (at summary judgment and/or trial), as well as the decision on class certification. As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal.

As to the fifth factor, Plaintiffs' counsel believe that the proposed Agreement is in the best interest of Settlement Class Members because, upon submission of a Valid Claim Form and approval of their claim, Settlement Class Members are eligible for a meaningful, immediate benefit instead of having to wait for the litigation and appeals to run their course. Further, due to the defenses Defendants have raised, and likely would raise at summary judgment and class certification, along with the enormous resources that Defendants have available to defend and litigate these cases through appeal, it is possible that the Settlement Class Members may receive no benefit whatsoever in the absence of this Settlement.

As for the final factor, the settlement discussions have followed an extended period of contentious discovery. The instant Settlement was not finalized until proposed Class Counsel conducted extensive investigation into the claims and defenses of the Class, engaged in significant discovery efforts, and negotiated the Settlement. Plaintiffs' counsel reviewed thousands of pages

of documents produced by Defendants (as well as answers to numerous interrogatories) and conducted several depositions of Defendants' corporate designees. Much of this discovery was obtained only after extended meet and confer discussions and contested discovery-related proceedings.

Presently, there is no opposition to the Settlement and, given the strength of this Settlement, Plaintiffs expect little or no opposition to the Settlement by Settlement Class Members. With the aid of Your Honor, the Parties reached the Settlement after an arms-length settlement conference. There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. Newberg, supra, § 11.42. The lengthy duration of the litigation; the extensive and sometimes contentious investigation and discovery process; the multiple months of contested settlement negotiations; the excellent result for the Settlement Class in spite of the significant procedural and substantive hurdles faced by Plaintiffs; and the participation of an experienced mediator throughout the negotiation process are all testament to the fairness of the proposed Settlement. Accordingly, the proposed Settlement, which provides significant prospective relief is fair, reasonable, and adequate, and warrants Court approval.

**B.** **The Proposed Settlement Class Meets All Requirements For Certification for Purposes of Settlement Under Federal Rule 23.**

   **i.** *The Proposed Settlement Class Is Ascertainable based on Objective Criteria*

Although not explicitly required under Rule 23(a), some courts require that a proposed class be ascertainable. A class is ascertainable if "its members can be ascertained by reference to objective criteria[.]" *Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 619 (N.D. Ill. 2011) (internal citations omitted); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) (noting that the class must be defined in a way that is

13

administratively feasible for a court to determine whether a particular individual is a member). However, to meet the ascertainability requirement the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be ascertainable,' with class members to be identified during a claims administration process[.]" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original).

Here, the proposed Settlement Class Members are ascertainable using Defendants' databases. These databases will show the unique phone numbers that were sent text messages. The Settlement Administrator can then perform a reverse look-up (and other investigations deemed appropriate by the Settlement Administrator) of those telephone numbers to identify the current email address for the owner of the number. *See Soppet*, 679 F.3d at 642 (describing use of a "reverse-lookup"). Because membership in the proposed Class is easily determined for the vast majority of Settlement Class Members based on objective criteria and records that have already been produced or are readily accessible, the proposed Settlement Class are ascertainable. *See Birchmeier*, 302 F.R.D. at 248; *see also Boundas*, 280 F.R.D. at 418 (finding that a proposed class is ascertainable even if the actual "names and addresses" of the class members are not identified); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015), cert. denied, No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) (noting that ascertainability focuses on the "adequacy of the class definition itself" and not on the "difficulty [in] identify[ing] particular members of the class").

**ii.** ***The Proposed Settlement Class meets all four prerequisites to certification under Federal Rule 23(a).***

1. Numerosity

The numerosity requirement of Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-

line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-806 (N.D. Ill. 2008); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (stating that a class of forty or more is sufficiently numerous). A plaintiff generally need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Here the proposed Settlement Class includes approximately 1.9 million telephone numbers scattered across the country. The Settlement Class are therefore undoubtedly numerous. See *Hinman*, 545 F. Supp. 2d at 806 (the court "may make common sense assumptions in determining numerosity"). In short, the estimated number of individuals in the Settlement Class, coupled with the fact that Settlement Class Members are geographically disbursed throughout the country, renders joinder impracticable and supports a finding of numerosity. See, e.g., *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008).

### 2. Commonality

The second prerequisite of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met where the putative class members share a "common contention" that is "capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 545 F. Supp. 2d at 806. The Seventh Circuit has found that class certification in

TCPA cases is "normal," because the main issues in such cases are "common to all class members." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

In this case, there is a very high degree of commonality within the Settlement Class. Plaintiffs and all other Settlement Class members assert the same claim—that Defendants' violated Section 227(b)(1)(A) of the TCPA by using an ATDS to send text messages to their cellphones without prior express written consent. Accordingly, the elements of each of the Settlement Class member's claims are identical.

Many courts in other TCPA cases have concluded that the issues discussed above are sufficient to satisfy the commonality standard. Here, because Plaintiffs' "allegation is not merely that all class members suffered a violation of the TCPA, but rather that all class members [within each class] were sent substantially similar unsolicited text messages by the same defendant[], using the same automatic dialing technology, commonality is satisfied." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012); *Booth v. Appstack, Inc.*, No. C13-1533, 2015 WL 1466247, at *8 (W.D. Wash. March 30, 2015) ("class members' TCPA claims are predicated on a common course of conduct by [defendant]: the use of the same predictive dialer to robocall…various cell phone numbers. As such, these claims implicate questions of law and fact that can be resolved in one stroke"). Therefore, the sheer number and significance of the common questions that exist within each proposed Settlement Class are sufficient to meet the commonality requirement as to each Settlement Class.

### 3. Typicality

The typicality prong of subsection 23(a)(3) requires that the class representative's claims be typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement focuses on whether the class representative's claims "have the same essential characteristics as the

claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). The claims of the named plaintiff must stem from the same course of conduct that gave rise to the claims of the class, and must rest on the same legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Hinman*, 545 F. Supp. 2d at 806. Typicality does not require claims to be "identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Courts have found that typicality is met where the defendant's action of sending unsolicited advertisements resulted in TCPA claims of the named plaintiff and members of the class. See, e.g., *CE Design v. Beaty Const., Inc.*, 07 C 3340, 2009 WL 192481, *5 (N.D. Ill. Jan. 26, 2009) (finding typicality where defendant's practice of sending unsolicited advertisements to the named plaintiff and the proposed class resulted in the claims of the potential plaintiffs being "based upon the same legal theory, i.e. violation of the TCPA.").

Plaintiffs and the members of the proposed Settlement Class all allege that Defendants sent them text messages without their prior express written consent in violation of the TCPA and that the Settlement Class Members' claims arise out of a common course of conduct. Further, Plaintiffs and the putative Settlement Class Members have all suffered the same injury: a violation of their rights protected under the TCPA. As a result, Plaintiffs and the proposed Settlement Class are entitled to identical statutory damages under the TCPA. Because the Settlement Class Members within each Settlement Class assert identical claims that are based on the same legal theory, the same facts, and the same course of conduct by the Defendants, and seek redress for the same injury, the Plaintiff is typical of the Settlement Class she seeks to represent.

### 4.    Adequacy

The final subsection of Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to

uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To satisfy the adequacy requirement, class representatives must show that: (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) experienced, competent counsel represent them. *Hinman*, 545 F. Supp. 2d at 807. It is persuasive evidence of the adequacy of proposed class counsel where they have been found adequate to serve as class counsel in other cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are representative of and consistent with the interests of the proposed Settlement Class Members—all have received allegedly unlawful text messages and seek relief under the TCPA. Plaintiff's pursuit of this matter over the course of years of protracted litigation demonstrates that she has been and will remain a zealous advocate for the Settlement Class. Plaintiff has no interests that are antagonistic to the interests of the putative Settlement Class Members; rather, her primary interest is the same, namely, to obtain relief pursuant to the TCPA.

Plaintiff is also represented by experienced, competent counsel. Proposed Class Counsel have regularly engaged in complex collective action litigation and have acted as class counsel in a multitude of prior cases, achieving equitable results for their clients and class members.[2]

---

[2] Plaintiffs' counsel have served as class counsel in the following cases: *Murillo v. Coryell Cnty. Tradesmen, LLC*, No. 15-3641 (E.D. La.); *Martinez v. Southern Solutions Land Mgmt.,* No. 14-2366 (E.D. La.); *Calix v. Ashton Marine LLC,* No. 14-2430 (E.D. La.); *Banegas v. Calmar Corp.*, 15-593 (E.D. La.); *Lopez v. Hal Collums Constr., LLC,* 15-4113 (E.D. La.); *Rendon v. Global Technical Solutions*, No. 15-242 (E.D. La.); *Rios v. Classic Southern Home Construction,* No. 15-4104 (E.D. La.); *Palma v. Tormus Inc.*, No. 15-3025 (E.D. La.); *Leon v Diversified Concrete*, No. 15-6301 (E.D. La.); *Hernandez v. Exterior Walls*, No. 15-4392 (E.D. La.); *Esparza v. Kostmayer Construction*, No. 15-4644 (E.D. La.); *Nunez v. Orleans Shoring*, No. 16-3005 (E.D. La.); *Pereira v. JRV Services LLC et al*, No. 18-2720 (E.D. La.); *Munoz v. Bollinger Shipyards*, No. 15-2328 (W.D. La.); *Leon v Diversified Concrete*, No. 15-6301 (E.D. La.); *Carrasco v. Demoine Declouette*, No. 16-11128 (E.D. La.); *Nieto v. Pizzati Enterprises, Inc*., No. 16-5352, (E.D. La.); *Blank v. Tomorrow PCS*, No. 16-11092 (E.D. La.); *Mairena-Rivera v. Langston Construction*, No. 16-850 (M.D. La.); *Hernandez v. Morning Call Coffee Stand*, No.

### iii.   The Proposed Settlement Class Is Certifiable Under Federal Rule 23(b)(3)

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.   Common questions predominate within the Settlement Class.

The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng's.*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003).

"Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). In TCPA cases, the predominance requirement is generally met where the class members' claims focus on a single calling operation or a single type of text message traffic. *See CE Design*, 2009 WL 192481, at *8-9. This is because, where a single telemarketing campaign or type of text message traffic is at

---

17-2613 (E.D. La.); *Maldonado v. New Orleans, Millworks*, LLC, No. 17-1015 (E.D. La.); Caceres v. Custom Drywall & Painting LLC, No. 17-6949 (E.D. La.); *Guevara v. JNV Glass Installation and Repair LLC et al*, No. 17-10625 (E.D. La.); *Valle v. Beaurayne Builders LLC et al*, No. 17-274 R. Doc. 61 (M.D. La.).

issue, the facts underlying the elements of the class members' TCPA claims will be virtually identical. *See Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393-94 (N.D. Ohio 2012) (finding that common questions predominated where the "defendant set up a single text message marketing campaign . . . which was conducted in the same manner with respect to all of the class members"); *Vasco v. Power Home Remodeling Group LLC*, No. 15-4623, 2016 WL 5930876, at *4 (E.D. Pa. Oct. 12, 2016) (certifying TCPA class for purposes of settlement where the defendant "engaged in a common course of conduct by making unsolicited telemarketing calls to the Class Members.").

In this case, common questions predominate within the Settlement Class, because all claims therein involve the same type of allegedly unlawful text message traffic. In other words, all of the members within the Settlement Class were sent text messages using the same messaging system and transmitted under similar circumstances. As such, the elements of any given Settlement Class Member's claim with regard to the technology used by Defendants will be based on the same classwide proof applicable to other Settlement Class Members. *Golon v. Ohio Savs. Bank*, 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) (Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis … [since s]uch proof obviates the need to examine each class member's individual position.").

Moreover, all of the Settlement Class Members would have received text messages after "consenting" to receiving them in the same way *i.e.* responding to media that displayed Defendants' coupon offers. Because consent is allegedly absent as to all of the Settlement Class Members, the principal affirmative defense to liability under the TCPA—prior express written consent—is also a common issue. "[I]n the absence of any evidence of consent by the defendant, consent is a common issue with a common answer." *Kristensen v. Credit Payment Servs.*, 12 F.

20

Supp. 3d 1292, 1307 (D. Nev. 2014); *Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) ("the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification." (citations and quotation marks omitted)); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1067 (D. Or. 2014) ("unless and until [defendant] comes forward with some evidence that it received prior express consent before it called putative class members, there is no barrier to certification."); *see Silbaugh*, 278 F.R.D. at 393 ("[defendant] admitted . . . that he did not have consent from any person, or take steps to confirm that consent was made. Having produced no evidence . . . defendant is unable to realistically argue that individual issues regarding consent outweigh the commonality."). Therefore, common questions within the proposed Settlement Class will predominate over any potential individualized issues.

>   2.      A class action is the most efficient way of adjudicating the putative
>           Settlement Class Members' claims and is superior to a multitude of
>           individual lawsuits.

A class action is superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims. To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman*, 545 F. Supp. 2d at 807. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Courts should also consider the "improbability that large

numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture*, 503 F.2d 1161, 1164-65 (7th Cir. 1974).

In consumer cases like this one with thousands of putative class members, a class action is especially likely to be superior:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multistate classes under state law, and society may gain from the deterrent effect of financial awards.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Because all of the Settlement Class Members' claims are brought pursuant to the same federal statute, this case is particularly suited for class treatment. For this reason, class actions involving TCPA claims are routinely certified in the Seventh Circuit. *See*, *e.g.*, *Ira Holtzman*, 728 F.3d at 684 (stating that "[c]lass certification is normal in litigation under § 227, because the main questions . . . are common to all recipients.").

Further, many putative Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims. Because the class members have little incentive to bring individual actions to recover "the relatively minimal amount of damages" available under the TCPA, they are unlikely to have an interest in individually controlling the prosecution of separate actions. *See Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013) ("Given the relatively minimal amount of damages that an individual may recover in suing for violation of the TCPA, the Court finds a class action would achieve Plaintiffs' objective better than if class members were required to bring individual actions."). It is therefore unlikely that, absent a class action, individuals would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class

Members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (holding that a class action is superior where it allows the plaintiffs to pool claims that would be uneconomical to litigate individually).

Moreover, because this litigation will settle if approved, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *4 (N.D. Ill. Feb. 28, 2012) (quoting *Amchem*, 521 U.S. at 622 ("settlement is a factor in the calculus" in determining whether certification is proper)). Accordingly, a class action is the superior method of adjudicating this action.

### iv. *The proposed Notice Plan satisfies Due Process and the requirements of Federal Rule 23.*

When a class is certified through settlement, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016). Where, as here, a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). The notice must contain specific information in plain,

easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2) (B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352.

As discussed above, the Parties have agreed to a comprehensive notice plan that more than satisfies the requirements of Due Process and Rule 23. The Settlement Agreement contemplates a multi-part notice plan designed to reach as many potential Settlement Class Members as possible. Under the notice plan, the Settlement Administrator will send direct notice of the Settlement via email or U.S. Mail to Settlement Class Members whose contact information can be located using reverse lookup technology. Additionally, the Settlement Administrator will establish a website containing the relevant court documents, notices, and the Claim Form, and which provides for the online submission of claims. In compliance with Rule 23(e)(4), all of the notices will inform Settlement Class Members of their right to object or exclude themselves from the Settlement.

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Defendants will send required notice to the appropriate government entities. *Id*., § 1715(b). Because the proposed notice plan effectuates direct notice to all class members identified using reverse lookup technology, reaches other potential class members through the Settlement Website, and fully apprises class members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved.

### v.    *Plaintiffs' Counsel Should Be Appointed Class Counsel.*

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims

asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

      As described in detail above, proposed Class Counsel have diligently litigated Plaintiff's TCPA claims and have devoted and will continue to devote substantial time and resources to this litigation. Proposed Class Counsel have extensive experience in class action litigation. Proposed Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class Members' claims and certification of the Settlement Class. Accordingly, the Court should appoint Plaintiffs' Counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## V.    <u>Conclusion</u>

      For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order (1) granting preliminary approval of the proposed Settlement; (2) appointing Plaintiff Madeline Yates as Class Representative; (3) appointing Roberto Luis Costales, William H. Beaumont, and Jonathan M. Kirkland of Beaumont Costales LLC as Class Counsel; (4) approving the form and content of the proposed notice and ordering that it be effectuated; (5) scheduling a final approval hearing; and (6) providing such other and further relief as the Court deems reasonable and just.

 

*Respectfully submitted:*

*/s/ William H. Beaumont*
Roberto Luis Costales, Esq.
William H. Beaumont, Esq.
BEAUMONT COSTALES LLC
107 W. Van Buren Street, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
rlc@beaumontcostales.com
*Attorneys for Plaintiff*