IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MADELEINE YATES, on behalf of herself and other persons similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Civil Action No. 1:17-cv-09219 |
| v. | ) ) ) | Honorable Sunil R. Harjani |
| CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC, | ) ) ) | |
| *Defendants.* | ) ) ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

NOW COMES Plaintiff, Madeleine Yates, who offers the following supplemental brief pursuant to Court order. Dkts. 145, 146. Specifically, Plaintiff provides law and argument with respect to the sufficiency of the Parties' proposed class settlement and also the merits of Class Counsel's fee request, to wit:

**I.    The Parties' settlement is sufficiently fair and reasonable, even if it incorporates coupons.**

Case law in the Seventh Circuit is thin when it comes to establishing a sure-fire standard for coupon class settlements. It is much easier to identify what the Seventh Circuit considers to be the problems with their use. There are at least three: "(1) it is doubtful that they provide meaningful compensation to most class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they may force class members to do future business with the defendant[.]" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quotations omitted). These factors are particularly applicable in consumer class cases where claims are staked to some defect or misrepresentation in a product or service. In such instances coupon settlements not only fail to punish class defendants, they also compel class members to

1

give those defendants more business. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 725 (7th Cir. 2014) (observing that future discounts on defendant's products are likely worth very little to those who have already suffered defendant's defective products in the past). Not only does someone who already bought defendant's defective widget probably not want another one, but in a coupon settlement the money that defendant earned by selling the defective widget in the first place is never disgorged—and given back to the consumer as "meaningful compensation" *i.e.* some or all of the cash a consumer lost in the transaction.

None of the problems with coupon settlements outlined in *Synfuel* are present in this case because Plaintiff's lawsuit does not allege Defendants' products are misrepresented or defective—if anything it is the opposite. Class members *like* Checkers hamburgers. That is why they signed up to receive a coupon for a free one—and subsequently received the telemarketing text messages that are the subject of this lawsuit. Given that class members in this case *by definition* sought a coupon for a free hamburger, they are certainly a class of people for whom *two* such coupons[1] consist of "meaningful compensation." *Id*. at 653. For this same reason the settlement is not a case of "forcing" an unsatisfied consumer to do business with a purveyor of perceived faulty goods. Additionally, there are no "ill gotten gains" that the Parties' coupon settlement fails to disgorge. Plaintiff's lawsuit does not allege that Defendants defrauded or stole from class members. She alleges a statutory violation of a law prohibiting telemarketing phone calls. If a defendant profits from a misrepresentation and then is only required to issue a coupon to its victims, that constitutes a windfall. Yet this concern is simply not applicable in this case because class members are not out-of-pocket by virtue of Defendant's actions.

---

[1] Checker's currently offers its "Big Buford" hamburger for $4.69 cents.
https://www.fastfoodmenuprices.com/checkers-rallys-prices/ (last accessed September 17, 2020).

In evaluating the adequacy of the Parties' proposed settlement it is also important to consider that it does more than offer coupons to class members. It also provides injunctive relief. Defendants are prohibited from using the phone number database that Plaintiff alleges was obtained without class members' prior express written consent. *See* Dkt. 125-7, Art. III(1)(b) ("Defendants shall be enjoined from using the database of cellular phone numbers utilized to send text messages to the Settlement Class for future text messaging programs."). While injunctive relief may not have the same flashy appeal as a big cash settlement, it still provides class members with a valuable peace of mind that they will not be receiving telemarketing communications from Defendants in the future; and that value to class members should be taken into account.

It is also worth underscoring that the sufficiency of the Parties' proposed settlement must be viewed against the merits of the case. "The most important factor relevant to the fairness of a class action settlement is…the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel* at 653 (quotations and citations omitted). As detailed in Plaintiff's motion for final approval, one way to characterize this settlement—at least from the class' perspective—is victory seized from the jaws of defeat. After *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020), the law in the Seventh Circuit does not at all favor Plaintiff's lawsuit; and while there may be few absolutes in law and life, there is a *significant likelihood* that Defendants would prevail on a summary motion regarding their alleged use of an automatic telephone dialing system ("ATDS") under the Telephone Consumer Protection Act. In its deposition Defendant Vibes Media LLC specifically addressed this point, testifying that its equipment dialed phone numbers from a database—not from a number generator. *Cf. Gadelhak*

3

at 464 (finding that an ATDS must have "the capacity either to store or to produce telephone numbers using a number generator…[not] dial[] numbers only from a customer database.").

At the final approval stage of a class action settlement "[t]he question [the Court] address[es] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Here, there is no question that the settlement is free from collusion—Your Honor personally facilitated the proposed resolution in the Parties' October 3, 2019 settlement conference. Could the settlement have been snazzier? Perhaps—though given the underlying merits of the dispute, it is not clear how much more "snaz" would have really been possible.[2] Above all, given the totality of the circumstances, the settlement is adequate. Yes, it involves coupons. But this case was spawned by class members who *sought* coupons. What better class of people to compensate with them?

## II. Plaintiff's Requested Attorney's Fees

### A. Why the Court should use the lodestar method to calculate attorneys' fees.

In a coupon settlement the Court has three options for calculating attorneys' fees. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015). First, it can calculate fees as a percentage of coupons used. *Id*. Second, it can calculate fees using the lodestar method. *Id*. Third, it can use a "blend" of both methods if the settlement provides for equitable relief in addition to coupons. *Id*. Because in this case there is such equitable relief, the Court must already undertake a lodestar analysis. It is simply more efficient to continue using that analysis to evaluate the remainder of the fee request. Additionally, Class Counsel has proposed and briefed

---

[2] And that is not to say it was not snazzy enough. In addition to the 7,170 settlement class members nearly *forty thousand* additional people made claims for the coupons offered by this settlement, but were denied when their phone numbers did not appear on the class list. *See* Dkt. 142-3, ¶ 23.

4

the lodestar approach, Defendants do not oppose it, and there is no strong countervailing reason *not* to use the lodestar approach. The alternative, pegging counsel's fees to coupons redeemed by class members, is unecessarily costly and/or time-consuming. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 634 (7th Cir. 2014) (suggesting that litigants could commission a coupon expert or wait until the expiration of the coupons to adjudicate class counsel's fee). For these reasons, the Court should employ the lodestar analysis in affixing Class Counsel's fees.

### B. In considering the ratio of claims made against Class Counsel's requested fee.

The Seventh Circuit has held "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to [in a class settlement] is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman* at 630. The Seventh Circuit has also indicated that a court should presume "[attorney's] fees that exceed the recovery to the class are unreasonable." *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, 867 F.3d 791, 793 (7th Cir. 2017). However, this "presumption is not irrebuttable[.]" *Id*. For example, in *Sears*, class counsel received $2.7 million dollars in fees whereas the class received $900,000. *Id*. at 792. The Court found the fee reasonable because of the "extensive time and effort that class counsel had devoted to a difficult case against a powerful corporation[.]" *Id*. at 793. Here, too, Class Counsel expended significant time and effort in a difficult case against *multiple* powerful corporations; and while the ratio of class counsel's fees to class funds should always be considered, the Seventh Circuit has refused to "establish…any particular fraction of the actual class recovery" as being required or reasonable. *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 833 (7th Cir. 2018). The case in point is *Sears*, where Judge Posner

authored an opinion upholding a class counsel fee award equivalent to 75% of the total $3.5 million settlement.[3]

There is no doubt that there have been plenty of class action settlements wherein class counsel received exorbitant fees for little-to-no work and at the utter expense of class members. This is not one of those cases. Class Counsel has expended a tremendous amount of time and energy litigating this case over what has been a period of almost three years. They have prevailed on dispositive motions and thus secured a cause of action for class members and they have conducted intensive discovery and they have incurred significant expenses—all while the appellate landscape was literally shifting under their feet. And, given the length and history of this case, Class Counsel does not request a lodestar that should make any lawyer blush. For these reasons Class Counsel asks that the Court find their fee request reasonable.

**C.  Notice to class of Class Counsel's attorneys' fees motion.**

Class counsel acknowledges that the Seventh Circuit in *Redman* expressed disapproval with setting an objection deadline before the due date for class counsel's attorney's fees motion. However, subsequent to *Redman*, courts in this Circuit have continued to set deadlines like the one proposed by the Parties in this case. *See, e.g., Cowen v. Lenny & Larry's, Inc*., No. 1:17-CV-01530, 2018 WL 7456041, at *2 (N.D. Ill. Nov. 1, 2018) (Gettleman, R.) (setting Plaintiff's deadline to apply for attorney's fees 7 days after the deadline for class members to object to the proposed settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, Dkt. 122 (N.D. Ill. Aug. 9, 2018) (Kocoras, C.) (setting objection deadline 14 days prior to final approval hearing and Plaintiff's motion for attorney's fees 7 days prior to final approval hearing); *Shoemaker v.*

---

[3] By contrast the requested fee in this case, at the current claims rate, is 83% of the total settlement. ($354,000 ÷ ($70,170 + $354,000)). Applying the 75% percentage awarded in *Sears*, Class in Counsel in this case would receive $318,127.50.

*Bass & Moglowsky, S.C.*, No. 19-CV-316-WMC, Dkt. 19 (W.D. Wis. Jan. 3, 2020) (setting Plaintiff's deadline to apply for attorney's fees 11 days after deadline for class members to object to the proposed settlement); *Domann v. Summit Credit Union*, No. 18-CV-167-WMC, Dkt. 71 (W.D. Wis. Jan. 7, 2020) (setting Plaintiff's deadline to apply for attorney's fees 17 days after the deadline for class members to object to the proposed settlement).

While the Court's rationale in *Redman* is well-taken, it overlooks the fact that objectors commonly engage their own attorneys and issue discovery to class counsel regarding, among other things, the fee petition. *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015) (granting objector's counsel discovery into class counsel's fee petition for the purposes of obtaining expert testimony on same); *Yamada v. Nobel Biocare Holding AG*, 2013 WL 12218387, at *1 (C.D. Cal. Sept. 17, 2013) ("the court may allow an objector discovery relevant to the objections to a motion for attorneys' fees") (quotations and citations omitted). In this way an objector can discover the detailed basis for class counsel's request long before any objection deadline. Alternatively, an objector can attend the fairness hearing and request an opportunity to take discovery from class counsel. *Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 763 (N.D. Ill. 2010) (citing *In re General Motors Corp.*, 594 F.2d 1106 (7th Cir.1979)). In sum, an objector with questions or concerns about the settlement has ample recourse to intervene in the approval process, and the Court has wide discretion in hearing those objections—including the ability to consider an objection notwithstanding a passed deadline or extending the deadline for an objector who argues they did not have an opportunity to view class counsel's fee brief.

That all said, the Parties are required to issue notice at the Court's discretion. Fed. R. Civ. P. 23(d)(1) and 23(e)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978) ("It is

clear that Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice."); *see also Kaufman v. Am. Express Travel Related Servs., Inc.,* 283 F.R.D. 404, 406 (N.D. Ill. 2012) ("The [district] court has nearly complete discretion to determine the form and content of notice to class members."). If the Court finds additional notice to class members necessary as a condition of final approval, then the Parties will need to undertake that notice if they intend to see the settlement ratified by the Court.

### III.   Conclusion

For the foregoing reasons the Plaintiff requests that the Court grant the Parties proposed settlement of this class action.

**Dated**:  September 18, 2020          */s/ Roberto Costales*

_____

Roberto Costales, Esq.
William H. Beaumont, Esq.
BEAUMONT COSTALES LLC
107 W. Van Buren Street, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
rlc@beaumontcostales.com

***Counsel for Plaintiff***