## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MADELEINE YATES, on behalf of herself and other persons similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Civil Action No. 1:17-cv-09219 |
| v. | ) ) | Honorable Sunil R. Harjani |
| CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC, | ) ) ) | |
| *Defendants.* | ) ) | |

## DEFENDANTS' SUPPLEMENTAL NOTICE IN SUPPORT OF
## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

On September 25, 2020, the Honorable Sunil R. Harjani held a status conference to discuss the Unopposed Motion for Final Approval of Class Settlement, Response to Class Objector, Application for Service Award, Application for Attorney's Fees and Costs ("Motion for Final Approval") [D.E. 142] filed by Plaintiff Madeleine Yates on August 12, 2020. During the status conference, the Court raised questions regarding (1) the claims rate, and (2) whether notice to the class via text message would be appropriate. Defendants Checkers Drive-In Restaurants, Inc. and Vibes Media, LLC (collectively, "Defendants") respectfully submit this Supplemental Notice, along with the attached Supplemental Declaration of Jennifer M. Keough Regarding Notice Administration (the "Supplemental Declaration"), to address the Court's questions and further the discussions during the status conference scheduled for October 8, 2020.

### I.    Courts Regularly Approve Class Action Settlements With Similar Claims Rates.

While Defendants recognize that the validated claims rate in this matter was lower than expected, courts have noted that a "low claims rate is not unusual in a consumer class action." *Keil v. Lopez*, 862 F.3d 685, 702 (8th Cir. 2017). Courts across the country have therefore regularly

approved class action settlements with claims rates below 1%, noting that such rates are not dispositive nor indicative that the notice plan or settlement was deficient. *See, e.g., Pollard v. Remington Arms Co.*, *LLC*, 896 F.3d 900, 906-907 (8th Cir. 2018) (affirming approval of a class action settlement where the claims rate was approximately .29%; explaining that the "low claim submission rate, while not ideal, is not necessarily indicative of a deficient notice plan. It is apparent that many class members received notice, but opted not to participate for any number of reasons"); *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-1952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (approving class action settlement where the claims rate was under 1%; explaining that the claims rate is "not dispositive" and that "many factors affect response rates and this ratio should not be given great significance"); *see also Poertner v. Gillette Co.*, 618 F. App'x 624 (11th Cir. 2015) (affirming approval of a class action settlement where the claims rate was approximately .76%); *In re Apple iPhone 4 Prods. Liab. Litig.*, Case No. 10-cv-2188, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (approving class action settlement where the claims rate was approximately .16%).

Low claims rates are also not uncommon in suits brought under the Telephone Consumer Protection Act ("TCPA"). Defendants sampled TCPA class action settlements from across the country and the below chart reflects a sampling of TCPA class action settlements that were approved within the last five years where the claims rate was less than 1%. Notably, the claims rates in these cases were consistent with the claims rate here, irrespective of the amount of benefit to the class members. Further, unlike the present case that provides both a class benefit to those class members that submit valid claims and injunctive relief to the entire settlement class, only one of these settlements also provided injunctive relief to the class. Notwithstanding, these settlements were approved.

2

| Case Name and Citation | Date of Final Approval | Claims Rate | Number of Opt Outs | Number of Objections | Injunctive Relief? | Benefit to each Claimant |
|---|---|---|---|---|---|---|
| *Abramson v. American Advisors Group, Inc., et al.,* No. 2:19-cv-01341-MJH (W.D. Pa. Sept. 29, 2020) | 9/29/2020 [D.E. 80] | 0.54% (6,999 valid claims/1,295,865 unique phone numbers) | 49 | 0 | No | between $266.70 and $1,066.80 |
| *Defranks v. Nastygal.com USA Inc.,* No. 1:19-cv-23028-DPG (S.D. Fla. Sept. 4, 2020) | 9/4/2020 [D.E. 41] | 0.42% (483 "timely-filed" claims/ 114,326 Class List) | 0 | 0 | No | $35 cash or $45 voucher |
| *Sana Mujahid v. Divvymed, LLC*, No. CV- 19-005454-PHX-NVW (D. Ariz. Aug. 31, 2020) | 8/31/2020 [D.E. 42] | 0.38% (109 valid claims/28,672 unique phone numbers) | 0 | 0 | No | $532.99 |
| *Goldschmidt v. Rack Room Shoes*, No. 1:18-cv-21220-KMW (S.D. Fla. Jan. 16, 2020) | 1/16/2020 [D.E. 86] | 0.33% (2,143 "timely claims"/642,188 unique and valid email addresses) | 0 | 0 | No | $5 cash and $10 voucher |
| *Reid v. I.C. Syst. Inc.*, No. 2:12-cv-02661-ROS (D. Ariz. July 27, 2018) | 7/27/2018 [D.E. 260] | .16% (1808 valid claims/1,129,972 unique email addresses) | 5 | 0 | No | between $685.76 and $1371.53 |
| *Gragg v. Orange Cab Co.*, No. 2:12-cv-00576-RSL (W.D. Wash. Oct. 5, 2017) | 10/5/2017 [D.E. 214] | 0.47% (283 valid claims/60,670 class members) | 0 | 0 | No | Every class member received a $12 taxi voucher; every class member who submitted a valid claim received $48 |
| *Meyer v. Bebe Stores, Inc.*, No. 4:14-cv-00267-YGR (N.D. Cal. Dec. 6, 2017) | 12/6/2017 [D.E. 164] | .19% (72 valid claims/38,460 class members) | 0 | 0 | No | $20 |

| | | | | | | |
|---|---|---|---|---|---|---|
| *In re Prescription Pads TCPA Litigation*, No. 1:13-cv-06897 (N.D. Ill. Jan. 22, 2015) | 1/22/2015 [D.E. 45] | .53% (309 claims/57,767 unique class member records) | 6 | 0 | Yes | $20 |

As set forth in the attached Supplemental Declaration, the claims rates in the above cases are also consistent with the Claim Administrator's experience in administering TCPA settlements that obtained final approval. The Claim Administrator reported that the percentage of the class that submitted a claim averages approximately 2.6% in the TCPA cases they have handled, with an average of approximately 1.36% of the settlement classes filing validated claims. *See* Suppl. Decl. at ¶ 8. Here, the Claim Administrator received 58,736 claims, representing a higher than average 3% claim rate for the Class List and 4% claim rate for the Class Members for whom the Claim Administrator was able to locate an email or mailing address. *Id.* at ¶ 6. Of the 58,736 claims, 7,017 claims were recommended for approval, representing a validated claim rate of 0.37% for the Class List and 0.5% for the Class Members who received notice. *Id.* at ¶ 7.

Defendants respectfully submit that while the validated claims rate in this matter was lower than expected, the overall and validated claims rates are still consistent with the above cases that obtained final approval and in-line with the Claim Administrator's experience in administering TCPA settlements that have obtained approval. Accordingly, Defendants respectfully request that the Court grant final approval of the settlement, as the parties have fully complied with the terms of the settlement that was negotiated in good faith for the benefit of the settlement class.

## II.    Text Message Notice is Not Appropriate in This TCPA Action.

Second, the Court questioned whether providing notice to the class via text message would be appropriate. As a preliminary matter, Defendants respectfully submit that the direct notice rate

of 75%[1] that was achieved here is reasonable and appropriate, particularly given the size of the class (approximately 1,890,005 unique phones numbers) and the fact that no other data existed in Defendants' records from which to identify the potential class members other than the cellular telephone numbers.

The Seventh Circuit has recognized that a notice reach of 70% or higher is fully within the acceptable range for a TCPA class action settlement. *See Kaufman v. Am. Exp. Travel Related Servcs. Co. Inc.,* 877 F.3d 276, 287 (7th Cir. 2017) ("[N]otice was provided to this massive class in a reasonable and effective manner, reaching approximately 70% of the members"). As Judge Feinerman recently noted, a class action reach of 75% "ordinarily is adequate." *Douglas v. W. Union Co.*, 328 F.R.D. 204, 218 (N.D. Ill. 2018) (citing Judge's Class Action Notice and Claims Process Checklist & Plain Language Guide 3 (FJC 2010) ("It is reasonable to reach between 70-95%")); *see also Pollard*, 896 F.3d at 906-907 (affirming approval of class action settlement where notice plan reached 73.7% of class members); *see also* Suppl. Decl. at ¶¶ 3-4 (explaining that the "Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide considers over 70% reach among class members to be a 'high percentage' and reasonable," thereby supporting the 75% reach rate achieved here). As in *Kaufman* and *Douglas*, Defendants respectfully submit that the 75% notice reach in this case was reasonable and adequate given the limited data available.

---

[1] Pursuant to the Declaration of Jennifer M. Keough Regarding Notice Administration [D.E. 142-3], the Claim Administrator was able to identify one or more email addresses for 1,419,400 of the 1,890,005 unique telephone numbers on the Class List and email notice was provided to each of those email addresses. *See* Keough Decl. at ¶¶ 4, 9. The email notice was returned as undeliverable for only 34,597 unique cellular telephone numbers. *Id.* at ¶ 10. The Claim administrator was able to locate complete mailing addresses for 26,594 of the 34,597 unique phone numbers where the email notice was returned as undeliverable and mailed notice was provided to those unique phone numbers. *Id.* at ¶ 11. As a result, direct notice was provided to 1,411,397 of the 1,890,005 unique phone numbers on the Class List, representing a notice reach rate of 74.67%. In addition to the direct notice, notice was also provided via the settlement website and the Claim Administrator reported that the website received 275,208 views as of August 7, 2020. *Id.* at ¶ 15.

5

Defendants further submit that providing notice via text would not be appropriate in this case, as it would potentially exacerbate the very harm that Plaintiff sought to prevent in bringing the action and could expose the parties and the Claim Administrator to additional risk under the TCPA. The ultimate underlying fact in this case was the receipt of a text message containing a coupon for a free burger. Thus, the Court should be particularly cautious about requiring the exact same scenario underpinning the entire class action—a text message with a coupon for a free burger—to provide additional notice to the class.

Notably, Defendants have not identified a single TCPA case where a court ordered or approved notice to the class via text message. In those cases where text notice was utilized, the actions typically involved circumstances where the text notice was provided to existing customers of the defendant such that there was arguable evidence of consent to provide such messages. *See, e.g., In re: TracFone Unlimited Service Plan Litig.,* No. 13-cv-03440-EMC, 2015 WL 13035125 (N.D. Cal. Feb. 20, 2015) (approving text notice to "current subscribers to a TracFone data service plan" on the conditions that (1) the messages would only be sent to those class members who had not opted out of receiving text messages, (2) no recipients would be charged for the text messages, and (3) the court found that any text message notices were purely informational messages); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) (overruling objection to the class notice in action alleging violation of the Internet Tax Freedom Act; concluding that text message notice to current customers of AT&T was sufficient).

In contrast, numerous courts have raised concerns about the impact of text notice on consumers, particularly when considering the implications of the TCPA. *See Miller v. JAH, LLC,* No. 5:16-cv-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) (rejecting text notice and explaining that "the court has serious reservations about sanctioning text messages as a way

to reach the potential class"); *see also Gibbs v. MLK Express Servs., LLC,* No. 218CV434FTM38MRM, 2019 WL 2635746, at *10 (M.D. Fla. June 27, 2019) (finding that text message notice was not appropriate because "sending notice via text message is unnecessary and potentially costly for the recipients"); *Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018) (denying the request to disseminate notice via text message because "sending notice via text message is unnecessary and potentially costly for the recipients").

In *Miller,* the court rejected text notice in light of the potential costs to class members and TCPA risks. 2018 WL 305819, at *3. Specifically, the court explained that "some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary damages." *Id.* The court also emphasized that "sending potential class members text messages will subject them to the annoyance of unsolicited messages that Congress passed the Telephone Consumer Protection Act, in part, to address." *Id.* These concerns are particularly poignant here when Plaintiff and the putative class members contend that Defendants did not have the proper consent to contact them on their cellular telephones via text message, and the Claim Administrator has indicated that it does not have a mechanism to send the text messages to the class without costs to the recipients. And Defendants are enjoined from using the database of cellular phone numbers utilized to send text messages to the Settlement Class for future text messaging programs pursuant to the injunctive relief terms of the settlement. As such, sending additional text messages to the class potentially subjects the class to the very same annoyance and costs that Plaintiff sought to remedy by bringing the present action.

Further, neither the TCPA nor the implementing regulations contain exceptions to the consent requirements for text messages sent by court order. Thus, even if the Court were to order

this type of notice, it may not insulate the parties, or the Claim Administrator, from potential TCPA claims. Therefore, in order to avoid a scenario wherein the parties seek to resolve a TCPA class action by engaging in the very conduct that forms the basis for the underlying lawsuit, Defendants respectfully submit that notice via text message would be inappropriate.

## **CONCLUSION**

For the reasons discussed herein, Defendants respectfully request that the Court approve the settlement and grant Plaintiff's Motion for Final Approval. The claims rate in this case is consistent with the claims rates previously approved in other TCPA class action settlements across the country in the last five years. Moreover, as the Seventh Circuit has held, a notice reach of 75% in a TCPA class action is adequate and reasonable and, therefore, no further notice should be required.

Respectfully submitted this 7th day of October, 2020.

/s/ Abigail M. Lyle
Jarrett Hale
Abigail M. Lyle
Hunton Andrews Kurth, LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Tel: (214) 979-8219
Email: jhale@huntonak.com
        alyle@huntonak.com

/s/ Matthew S. Dowling
Matthew S. Dowling
Catherine E. Goldhaber
Hawkins Parnell Thackston & Young LLP
300 N. LaSalle, Suite 5525
Chicago, Illinois 60654
Tel: (312) 667-8590
Email: cgoldhaber@hptylaw.com
        msdowling@hptylaw.com

*Counsel for Defendant Checkers Drive-In Restaurants, Inc.*

/s/ Amy E. Richardson
Amy Elizabeth Richardson
Jennifer P. Bagg
Harris, Wiltshire & Grannis LLP
1919 M Street NW, 8th Floor
Washington, DC 20009
Tel: (202) 730-1300
Email: arichardson@hwglaw.com
        jbagg@hwglaw.com

*Counsel for Defendant Vibes Media, LLC*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MADELINE YATES, on behalf of herself and other persons similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| *v.* | ) ) | Civil Action No. 1:17-cv-09219 |
| CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC, | ) ) ) | |
| *Defendants.* | ) ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2020, I electronically filed the foregoing via the CM/ECF system for the Northern District of Illinois, which sent notice of such filing to all counsel of record.

> */s/Matthew S. Dowling*
> Matthew S. Dowling