# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MADELEINE YATES, on behalf of herself and other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC,<br><br>Defendants. | Case No. 17 C 9219<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Madeleine Yates, on behalf of herself and other persons similarly situated, brings this class action against Checkers Drive-In Restaurants, Inc. and Vibes Media, LLC, alleging that Defendants violated the Telephone Consumer Protection Act ("TCPA") by sending a marketing message to her via text message without her express written consent in response to her request for a free hamburger. The parties have reached a settlement agreement and move for final approval of their class settlement. For the reasons explained below, the Court reserves consideration of final approval until the parties notify the class members of the proposed settlement via text message. Plaintiff's Unopposed Motion for Final Approval of Class Settlement [142] is denied without prejudice. The final approval hearing set for November 10, 2020 is stricken and will be reset as part of the supplemental text message notice plan.

## BACKGROUND

On January 17, 2020, the Court issued an order granting preliminary approval of the class settlement and the form and manner of notice proposed by the parties. Doc. 129. The notice plan consisted of: (1) an email notice to each settlement class member for whom the Settlement

Administrator could locate an email address; (2) a mailed "short-form" notice to each of the class members for whom all email notices were returned as undeliverable and a complete mailing address could be located; and (3) a "long-form" notice which was made available on the Settlement Website. *Id*. at ¶ 12; doc. 125 at 9-10, 29-29.

In order to ascertain email addresses for potential class members, the Settlement Administrator received data from Defendants identifying the pool of 1,890,005 unique phone numbers who received text messages from Defendants during the class period (the "Class List"). Decl. of Jennifer M. Keough, Aug. 11, 2020, ¶ 4 ("Keough Decl.") (Doc. 142-3). Using reverse lookup technology (*i.e.*, skip trace), the Settlement Administrator obtained 3,913,470 email addresses which were associated with 1,419,400 telephone numbers or 75% of the total phone numbers. *Id*. The balance of the unique cell phone numbers (470,605 telephone numbers) did not return an email address at all or returned an invalid email address. *Id*. Of the 3,913,470 emails sent, 3,578,016 were delivered and 335,454 were undeliverable, resulting in a 91.43% deliverability rate. *Id*. at ¶¶ 9-10. The undeliverable emails related to 34,597 unique cellular telephone numbers. *Id*. at ¶ 10. The Settlement Administrator mailed a postcard notice to each of the 26,594 class members for whom all email notices were returned as undeliverable, and it was able to locate a mailing address through the skip-trace process. *Id*. at ¶ 11. The Settlement Administrator tracked 399 postcard notices that were returned as undeliverable. *Id*. at ¶ 13.

The Settlement Administrator also established a dedicated case website to provide additional information to the class members, answer frequently asked questions, and allow class members to file a claim electronically. Keough Decl. at ¶ 14. The website received 275,208 views. *Id*. A case-specific toll-free number was established to allow individuals to obtain additional information regarding the settlement, and the toll-free number received 192 calls. *Id*. at ¶¶ 16-17.

The response to the notice plan was extremely low, resulting in a claims rate of 0.37% of the Class List. The Settlement Administrator received 58,736 timely claim forms. Keough Decl. at ¶ 23. However, those claims were analyzed and categorized as follows: (a) 12,125 claim forms were identified as duplicates, fraudulent, or test claims and denied; (b) 39,594 claim forms were submitted with telephone numbers that do not appear on the Class List; and (c) 7,017 claim forms were submitted with telephone numbers that appear on the Class List. *Id*. As a result, the parties have moved for approval of the class settlement where only 7,017 out of approximately 1.9 million potential class members will receive any monetary value, in the form of coupons, in this settlement.

## **DISCUSSION**

Review of a proposed class action settlement generally involves two steps. At the first step, the court primarily relies on the submission of the parties to determine if the notice plan appears adequate. If the court grants preliminary approval and authorizes notice to the class, the parties then move to the second step seeking final approval of the class settlement. This two-step approval process allows the court to determine, among other things, whether notice effectively reached class members. In determining whether to finally approve the settlement, the court must make a determination regarding the adequacy of the notice program. This determination is made after the claims deadline expires so the court has a complete factual record on which to consider whether "the notice plan achieved what it promised." Federal Judicial Center ("FJC"), *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 7 (2010). In making its determination, the FJC instructs courts to "[l]ook for evidence that the notice plan reached the class members as well as anticipated." *Id*. Courts may evaluate the success of a notice plan by the number of claims submitted. *Kaufman v. Am. Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) ("In the Preliminary Approval Order . . ., the court found the

notice plan . . . to be adequate to provide meaningful notice to the class members . . . . But the abysmal response rate has prompted the court to reconsider that decision.").

In this case, the class consists of all individuals within the United States who were sent a Checkers or Rally's-branded promotional text message by or on behalf of Defendants from December 21, 2013 to March 8, 2019. Defendants themselves do not have the names, addresses, or email addresses for class members. The Settlement Administrator sent individual notice to email addresses associated with 1,419,400 of the cellular telephone numbers based on skip tracing, direct mail notice to 26,594 class members for whom all email notices were returned as undeliverable and a mailing address was located though the skip-trace process, and established a settlement website containing relevant information and documents. Given the "lower than expected" response rate, the Court now questions the effectiveness of this primarily email notice campaign. Doc. 150 at 1.

When a class is certified through settlement, due process and Federal Rule of Civil Procedure 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *Kaufman*, 283 F.R.D. at 406. Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Wright v. Califano*, 587 F.2d 345, 355 (7th Cir. 1978) ("Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands.") (internal citations omitted). Class notice may take the form of "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. (c)(2)(B). The Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to

class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving notice" other than first class mail. Advisory Committee Notes to 2018 Amendments to Rule 23(c)(2). The Court has "nearly complete discretion to determine the form and content of notice to class members." *Kaufman*, 283 F.R.D. at 406.

At the time it approved the proposed notice plan, the Court believed it was adequate to provide notice to class members associated with the 1,890,005 unique cellular telephone numbers on the Class List. But only 7,017 valid claims were submitted despite 1,890,005 text messages during the class period. This represents a claim rate of 0.37%, leaving 99.63% of the class members without any monetary benefit from the settlement. In light of the representations at the settlement conference, the parties and the Court did not expect only 7,017 class members who received the text message to file claims. There are several possible factors that might have had an impact on the claims rate -- one is an ineffective direct email notice plan.

To address the incredibly low number of valid claims, the Court raised the possibility of giving notice of the proposed settlement to class members by text message to each of the phone numbers who received text messages from Defendants during the Class Period.[1] Plaintiff responded that the "[p]arties should re-issue notice via text message" and "the Court is well within its power to order the [p]arties to do so." Doc. 151 at 1. Defendants, on the other hand, contend that "providing notice via text would not be appropriate in this case, as it would potentially

---

[1] The Court remains convinced that notice by electronic means, which is clearly more convenient and substantially less expensive than notice by mail, is an adequate means to disseminate notice in this case. Checkers does not have names and addresses for class members, and it would not be practicable under the circumstances to require Defendants to attempt to locate accurate mailing addresses for more than 1.8 million class members. Individual mailed notice would be expensive and also not reasonable in light of the amounts at issue in the settlement and the other viable option of individual notice by text message.

exacerbate the very harm that Plaintiff sought to prevent in bringing the action and could expose the parties and the Claim Administrator to additional risk under the TCPA." Doc. 150 at 6.

The Court finds that supplemental notice by text message is appropriate in this case for three main reasons. First, the Court views the unexpectedly low claims rate in this case—about one third of 1%—as a warning that the primarily email notice program may have been inadequate. The exceedingly low response rate may be attributable to the failure to utilize electronic notice to the fullest extent possible. Email and text messages are both electronic forms of communication which are common and can be effective. *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population."). However, many Americans use text messages as their primary contact and access text messages much more than they would email or regular mail. "The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly (or constantly)." *Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 WL 2042323, at *5 (S.D. Tex. Apr. 28, 2020); *see also Thrower v. UniversalPegasus, Int'l Inc.*, 2020 WL 5258521, at *12 (S.D. Tex. Sept. 2, 2020) ("When it comes to personal email accounts, we have conditioned ourselves to tune the messages out, assuming they are unwanted advertisements, social-media notifications, unwelcome chain mail, a fake Nigerian prince seeking to transfer large sums of money out of the country, phishing scams, etc."). "[E]mails have the infelicitous tendency of slipping through the cracks, especially when folks have multiple e-mail accounts (*e.g.*, work, personal, school) with which they must stay current . . . . The same cannot be said about text message; people keep up with them." *Thrower*, 2020 WL 5258521, at *12; *M.A. by Ashear v. NRA Grp., LLC*, 2019 WL 2357767, at *2 (E.D.N.Y. June 4, 2019) (recognizing that our "primary

methods of communication have evolved" to include "text messages and phone calls to cellular telephones."). Indeed, one court faced with a request to send notice to potential class members by text message in addition to email and mail observed that "providing notice via text message in addition to other traditional notice methods will almost always be more appropriate in modern society." *Dickensheets v. Arc Marine, LLC*, 440 F.Supp.3d 670, 672 (S.D. Tex. Feb. 19, 2020). Given the reality of communications today, text message notification may be more effective at notifying potential class members than emailed notice alone.

As evidence of the success of the notice campaign here, the parties' final approval motion points out that the Settlement Administrator was able to obtain one or more associated email addresses for just over 75% of the total phone numbers and cites the FJC's Class Action Checklist recommendation of a target of at least 70% reach for class action notice campaigns. Doc. 142 at 12. Although a reach rate of 75% is normally adequate, the Court believes the reach rate exaggerates the effectiveness of the email campaign in this case where texting has become the primary method of communicating for many Americans, 100% of the class communicated with Defendants by text, the class did not communicate with Defendants through email, and about one-third of one percent of the class submitted a valid claim. Moreover, although a seventy percent reach may be the minimum needed to demonstrate the adequacy of a proposed notice plan, it is also reasonable to expect an effective notice campaign to reach up to ninety-five percent of a class. *See* FJC, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 1, 3 (2010).

At this stage, the Court concludes that email notice as the primary manner to inform the class about the settlement was not the best notice practicable under the circumstances. The availability of the 1,890,005 cellular telephone numbers who received text messages from

Defendants calls for a more extensive notice plan. In addition to the email delivery, the Court finds that it would be effective and practicable to provide potential class members with supplemental text message notice. A supplemental text message notice campaign will reach a significant number of additional class members with minimal effort and expense, and has the potential to increase the claims response rate as well.

Moreover, a supplemental text message notice campaign in this case is well-tailored to reach the maximum number of class members. *See* Advisory Committee Notes to 2018 Amendments to Rule 23(c)(3) (noting when selecting a method of giving notice, courts should consider "class members' likely access to such technology."). The Class List of 1,890,005 unique cellular telephone numbers contains almost the entire universe of class members.[2] Moreover, text messages are well-suited to notifying potential class members, since the alleged violations here arose out of Defendants' text messages in response to class members' texted request for a free hamburger. The potential class members are thus particularly comfortable communicating by text message and this form of communication may be more likely to effectuate notice than communicating by email. Like FLSA cases where class notice via text message has been allowed because "it is a form of communication previously used by the employer to communicate with its employee," text message is a form communication previously used by 100% of the class members to communicate with Checkers. *Butler v. TFS Oilfield Services, LLC*, 2017 WL 7052879, at *7 (W.D. Tex. Sept. 26, 2017). In this case, Defendants did not communicate with class members

---

[2] Defendants assert that "[g]iven the age of the data at issue, it is likely that a subset of these phone numbers have since been reassigned or ported, such that the current subscriber of the phone number may not be the same individual" who was sent the promotional text message by Defendants. Doc. 153 at 5. While it is possible that some class members' phone numbers have been reassigned, there has been no showing as to how many of these phone numbers have likely been reassigned. The Court is unwilling to assume without some support in the record that reassignment would affect more than a small subset of the class members.

through email. Thus, text message notification is particularly appropriate because Defendants have the cellular telephone numbers for virtually all of the class members, and Defendants' contact and communications with class members occurred only via text message. In addition, notice by two separate methods, email and text message, increases the likelihood that more potential class members will receive notice of the proposed settlement. *Dickensheets*, 440 F.Supp.3d at 672 (the relevant question is whether "potential plaintiffs are more likely to receive notice of the lawsuit if Plaintiffs are permitted to deliver notice via text message in addition to e-mail and mail?").

Second, the Court's concerns as to the notice plan also relate to the twenty-five percent of potential class members who received no individual notice at all through the email campaign despite the fact that Defendants have their cellular telephone numbers and they will be bound by the settlement. Twenty-five percent of the cell phone numbers that did not return an email address or returned an invalid email address comprises 470,605 individuals, which is a significant number of class members who did not receive individual notice. At the time that it approved the notice program in this case, the Court did not anticipate that twenty-five percent of the potential class members would receive no direct notice of the potential settlement though the email campaign. The motion for preliminary approval of the class settlement also did not indicate what percentage of the class the Settlement Administrator expected to reach via email based on its experience in other class actions. Furthermore, the notice plan provided no backup for individual notice to class members whose telephone numbers did not return an email address at all or returned an invalid email address. Moreover, besides the 470,605 class members for whom a verified email address was not located, there are two additional subsets of class members who did not receive any direct notice: (1) 8,003 class members for whom all email notices were returned as undeliverable and the Settlement Administrator was not able to locate a mailing address though the skip-trace process

and (2) 399 class members whose postcard notices were returned as undeliverable. Keough Decl. at ¶¶ 10-11, 13.

Failure to notify these class members who were reasonably identifiable renders the notice plan deficient. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974) (in a case involving a class certified pursuant to Rule 23(b)(3), Rule 23(c)(2) requires "individual notice be sent to all members who can be identified through reasonable effort."). Here, class members associated with 479,007 (470,605 + 8,402) telephone numbers are easily ascertainable and there has been no showing that notice could not be text messaged to each of them. Notice by text message to the same phone numbers to which the challenged text messages giving rise to the claims were sent is reasonably calculated to reach these class members. The email campaign's reach of 75% of class members is not a valid excuse for not providing individual notice to 479,007 ascertainable members of the class. As the Supreme Court has noted, "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23 . . . . Accordingly, each class member who can be identified through reasonable effort must be notified . . . . ." *Id.* at 176. These 479,007 class members did not get direct notice of the opportunity to make a claim, object to the settlement, or opt-out of the settlement despite the fact that Defendants have their telephone numbers and their rights will be terminated by the settlement.

In sum, the email notice plan was not well-tailored to reach the maximum number of class members. A single email notice, along with a mailed postcard notice to 26,594 class members and a settlement website, was not the best practicable notice under the circumstances, particularly where potential class members were easy to reach by text message and twenty-five percent of the class received no direct notice whatsoever. Given the specific facts of this case, the Court believes

10

that sending notice to the class by text message will be as effective or more effective than sending the notice by email. Re-notice via text message will also not be expensive. Plaintiff's counsel represents that the cost of transmitting a single text message notice to 1.9 million cellular telephone numbers would be approximately $18,000. Doc. 151 at 2. Accordingly, the Court holds that individualized notice by text message is the best notice practicable.

Further, neither the TCPA, Federal Communications Commission ("FCC"), nor case law has found that notice to potential class members of a proposed settlement via text message violates the TCPA. Nothing in Section 227(b)(1) of the TCPA or in TCPA case law expressly prohibits the Court from directing the use of text messages to inform potential class members of a proposed settlement. *See* 47 U.S.C. § 227(b)(1). The language of § 227(b)(1) makes it unlawful for any "person," to "make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service," absent prior express consent, an emergency, or other exceptions. 47 U.S.C. § 227(b)(1). "The TCPA does not define 'person,' but the Communications Act of 1934, which the TCPA amended, defines person as an 'individual, partnership, association, joint-stock company, trust or corporation.'" *Schuppe v. Harris & Harris, Ltd.*, 2019 WL 2473832, at *1 (N.D. Ill. June 13, 2019); *see* 47 U.S.C. § 153(39). The statute excludes all government entities from the definition of a "person." *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) ("The United States and its agencies ... are not subject to the TCPA's prohibitions because no statute lifts their immunity.").

The FCC has also found that the term "person" in the TCPA "does not include the federal government or agents acting within the scope of their agency under common-law principles of agency." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991,* 31 F.C.C. Rcd. 7394, 7398 (July 5, 2016); *see also id* at 7394 (clarifying that "the TCPA does not

apply to calls made by or on behalf of the federal government in the conduct of official government business, except when a call made by a contractor does not comply with the government's instructions."). Here, as a fiduciary of the class, it is the Court's duty to order that notice of the proposed settlement be sent to class members. *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002); Fed. R. Civ. P. 23(e)(1)(B) (as part of Rule 23's settlement approval process, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ."). In accordance with that duty, the Court may order counsel to send notice to the class. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978) ("It is clear that Rule 23(d) vests power in the district court to order one of the parties to perform the tasks necessary to send notice."). Rule 23(c)(2)(B) also explicitly authorizes the Court to direct the best notice that is practicable under the circumstances, including by electronic means.

Moreover, the TCPA was designed to target telemarketing solicitations. *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991,* 31 F.C.C. Rcd. at 7399 no. 62 ("[T]he legislative history indicates that Congress was particularly focused on telemarketing."). Text messages for the sole purpose of alerting potential class members of a proposed class action settlement are clearly distinguishable from commercial telemarketing activity that the TCPA seeks to regulate. *Hancock v. Lario Oil & Gas Co.*, 2019 WL 3494263, at *4 (D. Kan. Aug. 1, 2019) ("[T]he Court is unpersuaded that allowing limited text message notice to potential class members violates Congress's goal in passing the Telephone Consumer Protection Act. The notice is not a telemarking communication and thus not contemplated by the act.").

In addition, case law supports the Court's discretion to order dissemination of class notice via text message. Numerous district courts, including in this district and circuit, have approved of the use of text messages to provide notice to class members. *See Brashier v. Quincy Prop., LLC*,

2018 WL 1934069, at *6 (C.D. Ill. Apr. 24, 2018) ("While notice by text message is not uniformly permitted by the courts, this Court finds that notice by text message is appropriate in this case."); *In re AT&T Mobility Wireless Data Services Sales Litigation*, 270 F.R.D. 330, 352 (N.D. Ill. 2010) (St. Eve, J.); *see also* Docs. 151 at 1, 153 at 9 ns. 7 & 8 (listing cases approving class notice via text message). As to Defendants' contention that "no party has been able to identify a single TCPA case where the court ordered notice via text message," Defendants acknowledge that some courts have approved class notice via text message. The underlying cause of action is also irrelevant for purposes of determining whether court-ordered class notice via text message implicates the TCPA. The Court further notes that numerous courts have allowed notice to be delivered by facsimile to class members in TCPA cases challenging unsolicited faxed advertisements. *See City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 2014 WL 413533, at *2 (D. N.J. Feb. 3, 2014) (noting "the irony of using faxes to disseminate class notice in a [TCPA] lawsuit regarding unsolicited fax advertisements" but finding notification by fax the "most practicable" under the circumstances and citing Northern District of Illinois cases approving fax notice of proposed settlements in TCPA cases). In view of the foregoing, the Court finds no support for Defendants' argument that notice via text message could expose the parties and the Settlement Administrator to potential TCPA claims.

Finally, although Defendants claim that sending class notice via text message may potentially be costly for recipients with limited data plans, Defendants have not shown that a single text notice would involve more than a *de minimis* cost to class members. As for Defendants' argument that a text message will expose the class members to potential additional harm in a text message-based lawsuit, the Court finds that the text message notification here is actually designed to ameliorate that harm, if class members knowingly participate in the settlement, or preserve their

rights to further address that harm if they wish to object or opt-out. The real harm occurs when class members are unknowingly bound by a class settlement without adequate notice.

<u>Third</u>, the notice plan was deficient in one other respect. By setting an objection deadline before the due date for class counsel's attorney's fees motion, the notice plan did not comply with Federal Rule of Civil Procedure 23(h). *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014). A re-notification procedure will also address this concern and allow the parties to correct this deficiency.

## **CONCLUSION**

Because these deficiencies can be remedied through an efficient and inexpensive supplemental text notice program, the court orders an additional text message notice of the proposed settlement to those telephone numbers who did not submit a claim. Moreover, all class members are entitled to notice of class counsel's claim for attorneys' fees, including "the details of class counsel's hours and expenses" and "the rational that w[ill] be offered for the fee request." *Redman*, 768 F.3d at 638. Within seven days of this order, the parties shall meet and confer to construct a supplemental notice plan in accordance with the guidance given herein. The parties should also confer about language to be used in the text message to make clear to the recipient that the text message is a court-ordered notification of a class action settlement (and not a marketing text), and provide a link to the settlement website to ensure the recipient can easily submit a claim. The parties should further confer about how to avoid the risk of a claimant identifying a new telephone number on the claim form, which may unnecessarily result in a claim rejection. Within 14 days thereafter, the parties shall file that notice plan with the Court.

**SO ORDERED.**

Dated:  November 3, 2020

_____

Sunil R. Harjani
United States Magistrate Judge