**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MADELEINE YATES, on behalf of herself and other persons similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Civil Action No. 1:17-cv-09219 |
| *v.* | ) ) | Honorable Sunil R. Harjani |
| CHECKERS DRIVE-IN RESTAURANTS, INC. and VIBES MEDIA, LLC, | ) ) ) | |
| *Defendants.* | ) ) | |

**SECOND UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS SETTLEMENT**

1

## Table of Contents

I. Factual Background…………………………………...…….…………………..……………4

II. Motion for Final Approval……………………………………….…………………………...……7

    A.  Summary of the Settlement Terms…..……………………….…………………...7

    B.  Argument ……………………………………….………………...……….......9

        1.  Class Notice was the best practicable……..…………….………………………10

        2.  The settlement is "fair, reasonable, and adequate"………....…………….13

        3.  The lack of objections and opt-outs favor settlement approval………….......17

        4.  The Settlement Class meets the requirement of FRCP 23(b)(3)…………..18

        5.  Request for Service Award and Attorneys' Fees should be granted...……...24

  III.    Conclusion …………………………...……………………………………………...24

## Table of Authorities

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302 (N.D. Ill. July 26, 2011)….16

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)……………………………………18, 19 23

*CV Reit, Inc. v. Levy*, 144 F.R.D. 690 (S.D. Fla. 1992)………………………………………………21

*Anderson v. Nextel Retail Stores, LLC*, 2010 WL 8591002 (C.D. Cal. Apr. 12, 2010)…………18

*Armstrong v. Bd. Of Sch. Dirs. Of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)………9, 16

*Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002)……….17

*In re AT&T Mobility Wireless.*, 789 F. Supp. 2d 935 (N.D. Il. 2011)……………………………17

*Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017)……………………………………………14

*Borcea v. Carnival Corp.*, 238 F.R.D. 664 (S.D. Fla. 2006)……………………………………16

*Dickensheets v. Arc Marine, LLC*, 440 F.Supp.3d 670, 672 (S.D. Tex. Feb. 19, 2020)…………..11

*Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2005)…………………………....20

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020)…………………………………14

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)…………………………………………23

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ……………………………17

*Hispanics United of DuPage Cty. V. Vill. Of Addison, Ill.*, 988 F. Supp. 1130 (N.D. Ill. 1997)…...10

*In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2018) …………………………………………17

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir.1977). …………………………12

*In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)…………..15

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985)…………………………17

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)………………………………………......9, 13, 16

*Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67 (D. Conn. 2014)…………..23

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015)…………………………………………17

*Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 WL 2042323

(S.D. Tex. Apr. 28, 2020)………………………………………………………………………...11

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001)……………………………………18

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)…………………………………14

*McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002)………………………………………19

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)…………………………………13

*Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211 (N.D. Ill. 2002)…………………………20

*Pearson v. Target Corp.*, 2020 WL 4519053 (7th Cir. Aug. 6, 2020)……………………………18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)……………………………………………13

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712 (N.D. Ill. 2016)…..15

*Rankin v. Rots*, 2006 WL 1876538  (E.D. Mich. June 28, 2006)……………………………………10

*Roach v. T.L Cannon Corp.*, 773 F.3d 401 (2d Cir. 2015)…………………………………………22

*Rosado v. Ebay Inc.*, 2016 WL 3401987 (N.D. Cal. June 21, 2016)………………………………18

*Sadowski v. Med1 Online, LLC*, 2008 U.S. Dist. LEXIS 41766  (N.D. Ill. May 27, 2008)………22

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)……………………………15, 16

*Swift v. Direct Buy, Inc.*, 2013 WL 5770633 (N.D. In. Oct. 24, 2013)……………………………11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)………....13, 16, 17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)…………………………………… .19, 20

*Winner v. Kohl's Dep't Stores, Inc.*, 2017 WL 3535038 (E.D. Pa. Aug. 17, 2017)………………14

## **Table of Statutes**

47 U.S.C. § 227 …………………………………………………………………………..4

Fed. R. Civ. P. 23(a)(1) …………………………………………………………….........19

Fed. R. Civ. P. 23(a)(2) …………………………………………………….…………19, 20

Fed. R. Civ. P. 23(a)(3) ……………………………………………………………………20

Fed. R. Civ. P. 23(a)(4) …………………………………………………………………20, 21

Fed. R. Civ. P. 23(b)(3) ………………………………………………………………....21-23

Fed. R. Civ. P. 23(e)..…………………………………………………………….………10, 13

## **Other Authorities**

Manual for Complex Litigation, § 21.632 (4th ed. 2004)……………………………………..19

NOW COMES Plaintiff, Madeline Yates, who moves for an order of this Court granting Final Approval of the Parties' Class Action Settlement Agreement. Plaintiff also provides herein a response to the single objection made to the Class Settlement. Defendants Checkers Drive-In Restaurants, Inc. and Vibes Media, LLC, (hereinafter "Defendants") do not oppose this motion. The defined terms used herein have the meanings set forth in the Settlement Agreement.

## I.   FACTUAL BACKGROUND

Plaintiff alleges that Defendants offered a promotion advertised throughout Checkers or Rally's-branded restaurants whereby consumers could text a keyword to a short code telephone number and, in exchange, receive a coupon for a free hamburger. Plaintiff's Third Amended Complaint, Dkt. 54, ¶¶ 15-19. Plaintiff alleges that when texting the keyword as described, Defendants did not respond with a coupon but instead a request that consumers reply to obtain the coupon and other deals. *Id*. According to Plaintiff this text message violated the TCPA because it was a "marketing" message sent without consumers express written consent.

On these grounds Plaintiff filed a lawsuit in December of 2017 on behalf herself and a putative class, citing violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Dkt. 1. Defendant Checkers filed a motion to dismiss, Dkt. 5, to which Plaintiff responded with an amended complaint. Dkt. 20. Defendants responded with their own motions to dismiss, Dkt. 24 and 29, which the parties briefed and the Court denied in June of 2018. Dkt. 50. Plaintiff thereafter filed another amended complaint, Dkt. 64, which Defendants again sought to dismiss pursuant to FRCP 12. Dkt. 65. In April of 2019 Judge Coleman ruled on that motion, granting it in part. Dkt. 101. The Court found that the texts Plaintiff received after she agreed to be part of Defendants' text marketing campaign were not actionable under the TCPA, leaving Plaintiff (and the putative class) with actionable claims relative to only a single text message—the

initial message Defendants sent in response to Plaintiff's request for a free hamburger. Judge Coleman reserved the right to rule at a later time on Defendants' other defenses, namely (i) whether the equipment they used to dial Plaintiff's phone number was not an "automatic telephone dialing system" under the TCPA; and (ii) whether the Plaintiff actually provided consent to receive the first text message because Defendants included the proper disclaimers on the advertisements used to promote the free hamburger.

Concurrent and subsequent to these lengthy skirmishes over the complaint, the Parties undertook discovery. MIDP disclosures were exchanged and written discovery requests were propounded. The Parties disagreed about the scope of written discovery and several Rule 37 conferences ensued. Plaintiff ultimately sought relief from Magistrate Cole, who facilitated a compromise of the discovery impasse. Thereafter Defendants provided thousands of pages of document productions to Plaintiffs, principally in the form of call logs representing text messages issued by Defendants to the putative class. The volume and organization of these call logs necessitated the consultation of an expert. Plaintiff's counsel also engaged the services of an expert to help guide discovery relative to the dialing technology used by Defendants. Plaintiff also sought and obtained discovery from Defendants related to their free hamburger promotions and the manuals and other technical data related to the dialing technology used to call Plaintiff and Class Members. This written discovery culminated in a series of depositions that took place in Chicago and Tampa, Florida.

Throughout the discovery process the Parties maintained arms-length settlement discussions, including the exchange of demands, but were unable to consummate a deal. With fact discovery coming to a close and expert discovery on the horizon, the Parties agreed to a brief stay of proceedings to give mediation a shot. Defendants deny any wrongdoing and contend there are

various challenges to class certification and the merits of Plaintiff's claim, including but not limited to: (i) the consent language required under the TCPA was displayed on every piece of media offering consumers a coupon in exchange for texting a keyword; and (ii) the equipment used by Defendants to transmit the text messages at issue in this case was not an "automatic telephone dialing system" under the TCPA. However, in the course of a settlement conference with the Court on October 2, 2019, the parties reached the terms of a class wide Settlement.

A motion for preliminary approval was filed with this Court on January 16, 2020, Dkt. 127, and granted the following day. Dkt. 129. The essence of the settlement is that Defendants will provide two $5 Merchandise Vouchers to all Settlement Class Members who submit a Valid Claim Form, and Defendants also agree that the database of cellular phone numbers utilized to send text messages to the Settlement Class will not be used for future text messaging programs.

On August 12, 2020 the Plaintiff moved for final approval of the parties' settlement. Dkt. 142. Based on a number of factors, the Court asked the parties to explore a second round of notice to the class. Dkt. 156. Thereafter, the parties agreed on a supplemental notice plan whereby class members would receive notice of the proposed settlement via text message. Dkt. 157. The Court approved this supplemental notice plan, Dkt. 159, and the parties put it into action. The new notice plan resulted in a roughly a five-hundred percent (500%) increase in claims made against the settlement. *See* Section (B)(1), *infra*.

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint the undersigned attorneys as Class Counsel; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; (7)

overrule objections to the Settlement; and (8) enter Final Judgment dismissing the Action with prejudice.

## II.    MOTION FOR FINAL APPROVAL

### A.  <u>Summary of the Settlement Terms</u>

The Settlement terms are detailed in the Agreement (hereinafter "Agreement" or "S.A.") attached as **<u>Exhibit 1</u>** (and previously provided to the Court at Dkt. 125-7).  The following is a summary of its material terms.

### 1.    *The Settlement Class*

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> **All individuals within the United States who were sent a Checkers or Rally's-branded promotional text message by or on behalf of Defendants from December 21, 2013, to March 8, 2019.**

S.A. Art. 2(9) and (28).

Excluded from the Settlement Class are: (1) the trial judge presiding over this Action; (2) Defendants, as well as any parent, subsidiary, affiliate, or control person of Defendants, and the officers, directors, agents, servants, or employees of Defendants; (3) any of the Released Persons; (4) any Successful Opt-Outs; (5) Class Counsel, their employees, and their immediate family; and (6) members of the settlement class approved in *Medgebow v. Checkers Drive-In Restaurants, Inc.,* No. 9:19-cv-80090 (S.D. Fla.) on September 18, 2019.

### 2.    *Monetary Relief*

The Settlement requires Defendants to provide two $5 Merchandise Vouchers to all Settlement Class Members who submit a Valid Claim Form. In order to receive these Merchandise Vouchers, Settlement Class Members were required to complete a simple Claim Form. Each Settlement Class Member who timely filed a Valid Claim Form shall become a Settlement Class

Claimant and thereafter automatically receive a Merchandise Voucher. Settlement Class Claimants will be sent their Merchandise Vouchers at the address they submitted on their Claim Form after the Effective Date and within sixty (60) days of resolution of all Disputed Invalid Claims. S.A. Art. III(1)(a) and (3)(a).

### 3. *Injunctive Relief*

The Settlement also provides for injunctive relief. Specifically, Defendants agree that the database utilized to send text messages to the Settlement Class will not be used for future text messaging programs. S.A. Art. III(1)(b).

### 4. *Class Release*

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendants from claims that arise out of or relate to any text message(s) sent to Settlement Class Members by or on behalf of Defendants during the Class Period. The detailed release language is found in Section V of the Agreement and the Addendum thereto.

### 5. *Settlement Notice*

The Agreement includes a Notice Program. This procedure was designed to provide the best notice practicable and was tailored to take advantage of the information Defendants had available about Settlement Class members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Declaration of Roberto Costales ("Costales Decl."), attached as **Exhibit 2**, at ¶ 8. The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all

8

applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### 6. *Service Award*

Class Counsel are entitled to request, and Defendants do not oppose, a Service Award of up to $7,000 for the Class Representative (in addition to any Merchandise Vouchers she receives as a Settlement Class Member). S.A. Art. VI(2)(a). The Service Award, if so awarded by the Court, will compensate Class Representative for her time and effort in the Action, and for the risks she undertook in prosecuting the Action against Defendants. A formal application for this award has been made by Plaintiff at Dkt. 163.

### 7. *Attorneys' Fees and Costs*

Class Counsel are entitled to request, and Defendants do not oppose, attorneys' fees and costs in the amount of up to $354,000.00. S.A. Art. VI(1)(a). As briefed in Plaintiff's standalone motion for attorneys' fees and costs, the requested fees are less than Class Counsel's lodestar in this matter. *See* Dkt. 163.

### B. __Argument__

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) ("[Courts should] consider the facts in the light most favorable to the settlement."); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a

9

mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997).

While class action settlements are favored, they still require approval by a court. *See* FRCP 23(e). In evaluating a proposed class settlement, a court should not "substitute its business judgment for that of the parties; the only question…is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006).

Here, the Settlement is fair and should be approved. ***First***, the Notice Program was sufficient to notify Class Members of the Settlement. ***Second***, the terms of the Settlement are both reasonable and adequate when measured against the merits of the Parties' dispute. ***Third***, the single objection and single opt-out counsel in favor of court approval, and the objection to the Settlement does not advance a meritorious argument. ***Fourth***, the proposed Settlement Class meets all the requirements of FRCP 23(a) and (b)(3). ***Fifth***, the proposed award to the Plaintiff and her attorneys is reasonable. Each of these factors is explored in more detail below.

### 1. Class Notice was the best practicable and reasonably calculated to inform the Settlement Class of its rights

As part of this Court's preliminary approval of the Settlement, the Parties were ordered to provide notice to Class Members. This notice was ultimately provided as part of two overlapping notice programs.

The First Notice Program consisted of: (1) an "Email Notice" to each Settlement Class member for whom the Claims Administrator had an email address; (2) a mailed "Short-Form" Notice to each of the Class Members for whom all Email Notices were returned as undeliverable and a complete mailing address could be located; and (3) a "Long-Form" Notice which was made available on the Settlement Website. *See* Dkt. 142-3, at ¶¶ 4-15. In order to ascertain email

addresses for Class Members the Claims Administrator received data from Defendants identifying the pool of 1,890,005 unique phone numbers who received text messages from Defendants during the Class Period. *Id*. Using these phone numbers, the Claims Administrator was able to obtain one or more associated email addresses for 75% of the total phone numbers.[1] *Id*. The Claims Administrator then issued these email addresses those Email Notices that were returned as undeliverable and the Claim Administrator was able to locate a complete mailing address, mailed Notice was provided. *Id*.

The Second Notice Program consisted of a text message notice sent to every unique phone number who received a text message from Defendants during the class period, after removing phone numbers for the 7,017 members of the Settlement Class who previously submitted a Valid Claim Form. *See* Second Supplemental Declaration of Jennifer Keough ("Keough Decl."), attached as **Exhibit 3**, at ¶ 5. The language of his notice was negotiated by the parties and also fine-tuned by the Court. *See* Dkt. 157, 158. Notwithstanding the very small percentage of individuals who invariably would have changed or lost their phone numbers, this Second Notice Program likely reached an extremely high percentage of Class Members and was, in effect, the most efficacious way of notifying Class Members of all available methods. *See, e.g., Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 WL 2042323, at *5 (S.D. Tex. Apr. 28, 2020) ("The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly (or constantly).");

---

[1] The Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide recommends a target of at least 70% reach for class action notice campaigns. Courts have used this figure to determine the success of notice campaigns. *Swift v. Direct Buy, Inc*., No. 11-cv-401, 2013 WL 5770633, at *3 (N.D. In. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.")

*Dickensheets v. Arc Marine, LLC*, 440 F.Supp.3d 670, 672 (S.D. Tex. Feb. 19, 2020) ("[P]roviding notice via text message in addition to other traditional notice methods will almost always be more appropriate in modern society.") The efficacy of the Second Notice Program is clear from the fact that it resulted in a 470% increase in claims made against the settlement. Keough Decl. at ¶ 16.

Finally, the Claims Administrator also established the Settlement Website, www.burgerTCPAsettlement.com, which went live on February 5, 2020. Keough Decl. at ¶ 6. Key pleadings, such as the Long Form Notice and Plaintiff's request for a service award and attorneys' fees, have been and will continue to be available on the Settlement Website or upon request to the Claims Administrator. *Id.* In addition, a toll-free number was also established. Keough Decl. at ¶ 8. By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Long Form Notice.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims…[and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir.1977). The Notice, among other things, defined the Settlement Class, described the release provided to Defendants under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information—for example, the Settlement Website has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and a Service Award for the Class Representative. Hence, Settlement Class

members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, (1950)).

### 2. <u>The settlement is fair, reasonable, and adequate</u>

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). In making this determination the court should consider the following five factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, (4) the amount of opposition to the settlement and (5) the stage of the proceedings and amount of discovery completed. *Id.* at 653 (citing *Isby*, 75 F.3d at 1199). Each of these factors weighs in favor of finding the proposed Settlement warrants final approval.

### a. **The Settlement provides adequate relief to the settlement class given the risks posed by continued litigation**

The proposed settlement is commensurate with the strength of Plaintiff's claim. There exist a variety of persuasive defenses to this lawsuit, including on-point and arguably adverse Seventh Circuit caselaw that did not exist at the time the Plaintiff filed her complaint. Given the risks posed by these defenses, outlined in more detail below, the Settlement obtained for the Class is more than adequate and should be approved.

First, Defendants argue that they did not use an "automatic telephone dialing system" or "ATDS" to send Class Members text messages. What exactly comprises an ATDS is a question that has bedeviled many a litigant. Even within this District courts have reached contrary findings.

There essentially exist two schools of thought. One, embodied most notably in the Ninth Circuit opinion *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018), is that any equipment that can "store and dial numbers" qualifies as an ATDS. The opposing view, most recently outlined by the Seventh Circuit in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020), is that an ATDS must "store" or "produce" telephone numbers "using a random or sequential number generator." TCPA-plaintiffs typically prefer *Marks* and TCPA-defendants *Gadelhak* because, as a practical matter, telemarketers no longer use random or sequential number generators (like they did in 1991 when the TCPA was passed) but instead upload lists of phone numbers and then dial those phone numbers. Thus, the technology used by telemarketers today is considerably more likely to be an ATDS in the Ninth Circuit than in the Seventh. Simply put, with the recent emergence of *Gadelhak* in this Circuit Plaintiff's chances of prevailing on the ATDS question are undeniably lessened; and the class-wide resolution reached by the Parties is a fantastic result for Class Members, who would otherwise face the very real risk of recovering nothing from this lawsuit.

Defendants second defense is that they cannot be liable under the TCPA because Class Members gave their consent to receive text messages when they voluntarily provided their phone numbers in response to print advertisements making them aware that they were enrolling in a text message ad campaign. Other courts have found essentially analogous allegations to be unactionable under the TCPA. *See, e.g., Winner v. Kohl's Dep't Stores, Inc*., No. 16-1541, 2017 WL 3535038 (E.D. Pa. Aug. 17, 2017). The Seventh Circuit has also expressed skepticism on similar facts. *Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017) ("We have even less trouble concluding that Blow consented here, where she admittedly provided her cell phone number not on a generic form, but specifically in order to receive discounts[.]").

Third, Defendants argue that the issue of which Class Members provided prior express written consent would predominate and preclude class certification. Plaintiff disagrees but does acknowledge that "[c]ourts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016).

Given these hurdles, the proposed settlement represents a reasonable compromise. *See In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

### b. Continued litigation would be complex, costly and lengthy

Class settlement approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). If this litigation were to continue, it would be lengthy and very expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and expert depositions.[2] And even if the Settlement Class recovered a judgment at trial in excess of the what is provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.

---

[2] Expert discovery was stayed in this matter pending the resolution of the mediation with Your Honor. [Dkt. 107].

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### c. Class counsel strongly endorses the Settlement

The opinion of Class Counsel is also relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F.Supp.2d at 586-87; *Isby* at 1200. Here, based upon Class Counsel's analysis, the relief being offered to Settlement Class Members represents a significant recovery for the Settlement Class, particularly when weighed against Defendant's anticipated defenses and the inherent risks of continued litigation. *Id*. at ¶¶ 6, 13. Class Counsel strongly endorses this settlement and believes it is a great result for the class. *Id*. at ¶ 7.

### d. The Settlement was reached after significant litigation and arm's length negotiations

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302 at *8 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after more than a year and a half of litigation and was informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by Defendants, as well as considerable deposition testimony, concerning every aspect of this case. Armed with this information, Plaintiff and her counsel had "a clear view of the

16

strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation, which they have done. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd 798 F.2d 35 (2d Cir. 1986). Accordingly, this factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 3.      The lack of objections and opt-outs favor settlement approval

The Seventh Circuit has held that courts should also consider the opposition, if any, to class settlements when evaluating them for fairness. *Synfuel Techs* at 653. Here, the opt-out and objection period to the Settlement ended on March 15, 2021 and the Claims Administrator reports one request for exclusion and one objection to the Settlement. Keough Decl. at ¶¶ 10-13. This extremely low number of opt-outs/objections counsels in favor of approving the settlement. "A small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002). Here, the opt-out/objection rate ends up being 0.000001%, infinitesimal even when compared to other extremely small opt-out rates that have been used as a basis to approve class action settlements in this district. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 230 (N.D. Ill. 2016) (holding that a 0.000697% opt-out rate supports the settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 495 (N.D. Ill. 2015) (same, for 0.0002209%); *In re Capital One*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2018) (same, for 0.0032%); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (same, for less than .01%).

#### a.      The single objection was non-conforming and should be overruled

The single objection made to the settlement, Dkt. 141, fails to state a valid objection. As the Seventh Circuit recently observed "[g]ood-faith objectors should be able to say specifically

why the class or a part of it has been deprived of the fair, reasonable, and adequate settlement to which it is entitled." *Pearson v. Target Corp.*, No. 19-3095, 2020 WL 4519053, at *9 (7th Cir. Aug. 6, 2020). This common sense rule is echoed in the Parties' Settlement Agreement, which states: "[t]o be valid, each Objection must…set forth a statement of the legal and factual basis for the objection." S.A. Art. V(6)(b). Both the objection procedure outlined in the Parties' Agreement and the 7th Circuit's finding in *Pearson* serve the same principle: class action settlements should not be held hostage by unfounded objections.

Here, the Objector does include any specifics as to the alleged deficiency of the Settlement, apart from the claim that it is "insufficient" and "insulting." This is simply not enough and the objection is non-conforming. The Objector cites no evidence, caselaw, nor any allegedly deficient detail of the Settlement. These are the particulars that are required for a court to evaluate an objection. *See, e.g., Anderson v. Nextel Retail Stores, LLC*, 2010 WL 8591002, at *10 (C.D. Cal. Apr. 12, 2010) (overruling objector where they "fail[ed] to identify any specific facts…[or] any evidence or any caselaw" showing the proposed class settlement was inadequate.); *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (S.D. Ill. 2001) (finding an objection to a class settlement meritless because it relied on "no principle of law[.]"); *Rosado v. Ebay Inc.*, 2016 WL 3401987 (N.D. Cal. June 21, 2016) (finding an objector's claim unpersuasive where it failed to cite any evidence in support.)

Because the Objector fails to address any particular element of the Settlement and also because the Objector offers no authority in support, the objection is facially inadequate, non-conforming, and the Court should overrule it.

## 4.    <u>The Settlement Class meets the requirements of FRCP 23(b)(3)</u>

Settlement classes like the one proposed here are appropriate for certification when they meet the requirements of Rule 23(a) and (b)(3). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591,

621 (1997); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004). Here, the Court should certify the Settlement Class, defined as "all individuals within the United States who were sent a Checkers or Rally's-branded promotional text message by or on behalf of Defendants from December 21, 2013, to March 8, 2019," because it meets the required elements under Rule 23(a) and Rule 23(b)(3).

### a. The requirements of Rule 23(a) are satisfied

Rule 23(a) requires that (a) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (b) there are questions of law or fact common to the proposed settlement class (commonality); (c) plaintiff's claims are typical of those of the class (typicality), and (d) the plaintiff and class counsel will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). The Settlement Class satisfies each of these requirements.

### i. Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Settlement Class consists of more than a million of individuals dispersed throughout the United States and so joinder of all Settlement Class Members is obviously impractical. *See McCabe v. Crawford & Co*., 210 F.R.D. 631, 643 (N.D. Ill. 2002) (forty or more class members is generally sufficient to establish numerosity). Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

### ii. Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2). The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether Defendants' dialing technology qualifies as an ATDS, whether the text messages are "advertisements" under the TCPA, whether Defendants obtained prior express written consent to send the messages, and whether Defendants' violations were willful or knowing. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."). Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Here Plaintiff's claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. Plaintiff and each Settlement Class Member received an allegedly unauthorized text messages from Defendants sent as part of the same marketing campaign. Moreover, Plaintiff and the putative Settlement Class members all seek statutory damages. Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### iv. Adequacy of Representation

20

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted). The first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotations omitted). Plaintiff challenges the same alleged unlawful conduct and seeks the same monetary relief for herself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case on behalf of the Settlement Class. Thus she cannot be said to have any interest antagonistic to the class and there is no showing otherwise.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who are experienced in class actions. Costales Decl. ¶ 14. Plaintiff's counsel have successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. *Id*. Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### b.      The requirements of Rule 23(b)(3) are satisfied

Because Plaintiff seeks certification under Rule 23(b)(3), Plaintiff must additionally show (a) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (b) that a class action is superior to other available methods

of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3). Both requirements are easily satisfied by the proposed Settlement Class.

**i.     Common questions predominate**

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

This entire case is focused on Defendants' alleged common practice of transmitting the same advertising messages to cellular telephone numbers without obtaining the requisite consent. *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions…violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the…faxes"). Thus, the central questions in this case are capable of resolution on a class-wide basis by looking to Defendants' records. Because Defendants used the same technology to transmit all of the text messages, whether that technology violates the TCPA is a question capable of resolution on a class-wide basis with common proof. Moreover, individualized issues of consent do not predominate. Whether the messages sent by Defendants are "advertisements" within the meaning of the TCPA is a question of law that can be resolved in one stroke for the entire Settlement Class—and, if

answered in the affirmative, would subject Defendants to the heightened requirement of "prior express written consent" for the entire Settlement Class.

Because there are no apparent issues requiring individualized proof, the predominance requirement is satisfied for purposes of preliminary approval.

### ii.     Class treatment of Plaintiff's claims is superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014); see also *Amchem*, 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiff's claims are shared by more than one million other consumers, each of whom received at least one text message from Defendants via the same dialing technology. The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, the statutory damages available under the TCPA are small in comparison to the costs of litigation. As a result, it is unlikely any Settlement Class Member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

5.     <strong><u>Application for Service Award and Attorneys' Fees and Costs</u></strong>

As detailed in Plaintiff's standalone motion, Dkt. 163, both a service award to the Plaintiff and also attorneys' fees and costs to her counsel are appropriate in this case. In addition to the relief sought by the instant motion, the Court should also grant Plaintiff's motion for a service award and attorneys' fees and costs.

III.     <strong><u>Conclusion</u></strong>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (1) granting Final Approval to the Settlement; (2) certifying for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appointing Plaintiff as Class Representative; (4) appointing the undersigned attorneys as Class Counsel; (5) approving the Plaintiff's requested Service Award; (6) approving Class Counsel attorneys' fees and costs; (7) overruling objections to the Settlement; and (8) enter Final Judgment dismissing the Action with prejudice.

A Final Approval Order has been attached hereto as **<u>Exhibit 4</u>**.

*Respectfully submitted:*

*/s/ Roberto Costales*

_____

Roberto Costales, Esq.
William H. Beaumont, Esq.
BEAUMONT COSTALES LLC
107 W. Van Buren Street, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
rlc@beaumontcostales.com

***Counsel for Plaintiff and the Putative Class***

24